In re Kucharski

(No. 5083—Decided September 20, 1977.)

*Messrs. Lucas, Prendergast, Albright, Gibson, Brown & Newman*, for appellees.

*Mr. John O. Martin* and *Mr. Harry P. Jeffrey*, for appellants.

*Mr. James W. Drake*, city attorney and *Edward M. Taylor, Jr.*, for appellees, the city of Dayton.

Potter, J. Thirty of thirty-four owners of 894.5 acres located in Mad River Township filed a petition with the Board of County Commissioners of Montgomery County to annex to the city of Dayton. On November 20, 1973, the Board of County Commissioners denied the requested annexation. Mr. John Kucharski, a petitioner for annexation, appealed to the Montgomery County Court of Common Pleas pursuant to R. C. 307.56.[2] The Common Pleas Court,

---

[2]"A person aggrieved by the decision of the board of county commissioners may appeal to the court of common pleas, as provided by and under the authority of Chapter 2506. of the Revised Code. The court shall advance such appeal when perfected for immediate trial."

in a detailed decision and entry on appeal, reversed the Board of County Commissioners without any further order.[3] The County Commissioners delivered the complete transcript of their proceedings to the Clerk of the city of Dayton. Mr. Theodore Thies, a landowner within the area to be annexed, appealed the Common Pleas Court's decision to the Court of Appeals for Montgomery County. In addition, the appellant in the Court of Appeals filed a motion for an injunction pending appeal on February 10, 1976, to enjoin Donald C. Crawford, Clerk of the city of Dayton, the Mayor, James H. McGee, Commissioner Fred E. Weber, Commissioner Charles J. Curran, Commissioner Michael L. Schierloh and Commissioner Mrs. Pat Roach from progressing with the annexation process. On March 1, 1976, the following judgment entry was made:

"* * * [It] *is here ordered*:

"That pending the disposition of this matter in this Court, Donald L. Crawford, Clerk of City of Dayton, is enjoined from laying before the legislative authority of

---

[3]The trial court inter alia noted that:

"Prior to 1967, the commissioners were given virtually sole and unlimited discretion on questions of annexation. However, Section 709.033, Revised Code, enacted in 1967, establishes specific standards to be applied by the board to the evidence before it in annexation proceedings, and grants to the board the discretion to make only those factual determinations specifically called for in the statute. *Lariccia* v. *Board of Commrs.*, 38 Ohio St. 2d 99 (1974). In order to grant the annexation the board must find, among other things, that the territory included in the annexation petition is not unreasonably large, and the general good of the territory sought to be annexed will be served if the annexation petition is granted.

"The County Commissioners made all of the findings required by R. C. Section 709.033. They found that all of the necessary requirements for annexation were present, except the two that the area is not unreasonably large and the general good of the territory will be served if annexation is granted. * * *

"In conclusion, any decision that the Commissioners' finding that the area is unreasonably large is arbitrary, capricious, and unsupported by the preponderance of reliable probative evidence depends on the interpretation this Court places on the term 'unreasonably large.' The finding that the general good of the area will not be served by annexation appears to be unsupported by the preponderance of reliable probative evidence."

the Municipal Corporation of Dayton, Ohio, the transcript and accompanying map and petition of the captioned annexation.

"Appellant's other applications for preliminary injunction are denied."

Mr. Crawford denied knowledge of the injunction and delivered the transcript and map to the Dayton City Commission. On March 10, 1976, the Dayton City Commission passed Ordinance No. 25084 to annex the 895+ acres in question. The appellant was granted his motion of March 26, 1976, to stay the annexation on April 6, 1976. Also, on April 6, 1976, the appellee's motion to dismiss the appeal as moot was overruled with the following reservation:

"There are other facts and law involved in the question of service, notice and knowledge which may be considered on the merits with the record, or any supplements thereto which are not considered at this time. The present order is designed to continue the status quo with no further steps or activity related to annexation until this appeal is decided on the merits."

Writs of prohibition filed by the city of Dayton and John S. Kucharski in the Ohio Supreme Court to require this court to consider the appeal moot were denied.

From the trial court's judgment, assignments of error Nos. 1 and 2 are, to wit:

"The Trial Court engaged in a trial de novo by relying on the interpretation the *Court* placed on the term 'unreasonably large.'

"The Court of Common Pleas substituted its judgment on the evidence for that of the Board of County Commissioners by weighing the evidence and testimony presented before the Board."

The Montgomery County Common Pleas Court had a hearing pursuant to R. C. 2506.03, which reads as follows:

"The hearing of such appeal shall proceed as in the trial of a civil action but the court shall be confined to the transcript as filed pursuant to section 2506.02 of the Revised Code unless it appears on the face of said transcript or by affidavit filed by the appellant that:

"(A) The transcript does not contain a report of all

evidence admitted or proffered by the appellant.

"(B) The appellant was not permitted to appear and be heard in person or by his attorney in opposition to the order appealed from:

"(1) To present his position, arguments and contentions;

"(2) To offer and examine witnesses and present evidence in support thereof;

"(3) To cross-examine witnesses purporting to refute his position, arguments and contentions;

"(4) To offer evidence to refute evidence and testimony offered in opposition to his position, arguments and contentions;

"(5) To proffer any such evidence into the record, if the admission thereof is denied by the officer or body appealed from.

"(C) The testimony adduced was not given under oath.

"(D) The appellant was unable to present evidence by reason of a lack of the power of subpoena by the officer or body appealed from or the refusal, after request, of such officer or body to afford the appellant opportunity to use the power of subpoena when possessed by the officer or body.

"(E) The officer or body failed to file with the transcript, conclusions of fact supporting the order, adjudication or decision appealed from; [,] in which case, the court shall hear the appeal upon the transcript and such additional evidence as may be introduced by any party. At the hearing any party may call as if on cross-examination, any witness who previously gave testimony in opposition to such party."

The Court then made its finding pursuant to R. C. 2506.04, which reads:

"The court may find that the order, adjudication or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication or de-

cision, or remand the cause to the officer or body appealed from with instructions to enter an order consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law pursuant to sections 2505.01 to 2505.45, inclusive, of the Revised Code."

The Common Pleas Court properly considered whether or not the Board of County Commissioners complied with R. C. 709.033. *Lariccia* v. *Board of Commrs.* (1974), 38 Ohio St. 2d 99; see *Cincinnati Bell* v. *Glendale* (1975), 42 Ohio St. 2d 368. R. C. 709.033 reads:

"After the hearing on a petition to annex, the board of county commissioners shall enter an order upon its journal allowing the annexation if it finds that:

"(A) The petition contains all matter required in section 709.02 of the Revised Code.

"(B) Notice has been published as required by section 709.031 (709.03.1) of the Revised Code.

"(C) The persons whose names are subscribed to the petition are owners of real estate located in the territory in the petition, and as of the time the petition was filed with the board of county commissioners the number of valid signatures on the petition constituted a majority of the owners of real estate in the territory proposed to be annexed.

"(D) The territory included in the annexation petition is not unreasonably large; the map or plat is accurate; and the general good of the territory sought to be annexed will be served if the annexation petition is granted.

"The board of county commissioners shall grant or deny the petition for annexation within ninety days after the hearing set pursuant to section 709.031 (709.03.1) of the Revised Code.

"If the board of county commissioners grants the petition for annexation it shall enter on its journal all the orders of the board relating to the annexation and deliver, a certified transcript of all orders of the board, signed by a majority of the members of the board, the petition, map, and all other papers on file relating to the annexation proceedings to the auditor or clerk of the municipal corpora-

tion to which annexation is proposed." In reviewing the board of county commissioners' action under R. C. 709.033, the Common Pleas Court is to focus on "the general goods'" of the territory sought to be annexed, *Lariccia* v. *Board of Commrs., supra,* at 102.

The Common Pleas Court did not err in finding that the preponderance of credible evidence favors annexation. The evidence considered was the recommendation of the plan commission, the delivery of utility services, and favorable effects on property. A majority of the landowners in the proposed annexation area wanted to be annexed by the city of Dayton; except for Mr. Thies who was represented by counsel, those who spoke against annexation at the hearing before the board did not reside in the affected area.[5]

The Board of County Commissioner's Resolution No. 2754, of November 20, 1973, states:

" (7) The area sought to be annexed is unreasonably large for the following reasons:

" (a) Most of the area sought to be annexed lies at a considerable distance from the city of Dayton, and the area sought to be established is contiguous to the City only by a golf course;

" (b) The area does not have existing municipal traffic arteries by which police, fire, trash collection, street cleaning, or snow removal services could be provided directly from the cith (sic) without potential confusion as to jurisdictional boundaries.

" (c) The boundaries of the area sought to be annexed are arranged in a meandering fashion, with the majority of the acreage having no cohesive physical relationship to the city of Dayton, and resulting in several isolated pockets of township territorial jurisdiction left as islands within the areas to be annexed."

---

[4]General good refers to what would benefit the owners and inhabitants of the territory. *In re Long* (1970), 26 Ohio Misc. 6; *Weber* v. *Williams* (1972), 32 Ohio App. 2d 65.

[5]The desires of the owners of the territory sought to be annexed must be given greater weight than the consideration of residents outside that territory. *In re Lariccia* as cited in (1973), 40 Ohio App. 2d 254, affirmed (1974), 38 Ohio St. 2d 99, *cf.* Farrell-Ellis, Ohio Municipal Code (11th Ed.) 1974 Supp., Vol. 3, Sec. 2.8(a).

The reasons set forth above do not support a finding that the area is unreasonably large. We have considered the appellant's comments on *In the Matter of the Appeal of Anthony B. Char,* unreported, No. 5448, Court of Appeals of Montgomery County, decided May 19, 1977; however, noting that the discretion of the Board of County Commissioners is curtailed by R. C. 709.033 and the overwhelming evidence in the *case sub judice* for annexation, the Common Pleas Court's judgment is correct.

Further, we find that the Board of Commissioners acted in clear defiance of the standards stated in R. C. 709.033, as indicated by statements made in the Resolution of the Board of County Commissioners.[6]

Therefore, assignments of error Nos. 1 and 2 are not well taken.

Assignment of error No. 3 is, to wit:

"The Court of Common Pleas failed to rule on the Motion for Appellee for an order allowing property own-

---

[6]See Excerpt from the Resolution of the Board of County Commissioners as follows: "The Board of County Commissioners also has considered the effect of the cutting of such a swath as 895 acres of land from Mad River Township. A cursory examination of the map shows that it would divide the township into 3 areas for services, with the resulting potential inefficiency and confusion of jurisdictions. The tax base of the township would be reduced, and therefore, potentially, the present level of services because of the loss in revenue. Proponents of this annexation, and others, will now say that courts have said that a Board of County Commissioners should not consider such an effect on the balance of a township. To this we respond that such opinions were set down prior to the enactment of the present annexation laws, when annexation petitions could only be signed by resident freeholders. If a majority of such persons within a given area wanted to take their homes into a municipality, it seemed democratic to permit them to choose where they wished to live, regardless of the rest of the area. But now, Ohio law says that property owners may sign, persons or corporations who may never 'set foot,' so to speak, in the area to be annexed nor its environs. Therefore, we challenge the philosophy of ignoring the effect of an annexation on the balance of the township—we think that it is our duty to consider the viability of the community that is Mad River Township, a viability often demonstrated by the township's civic associations and by the more than 5,000 signatures, equal in number to 80% of the registered voters in the township, on a petition opposing annexation; a viability that would be eroded by such a large gerrymandered annexation as the one presently before us."

ers within the area to be annexed to become parties-appellee, (sic) individually or as a class.''

The parties seeking intervention were not interested parties at the time the petition for annexation was filed. Those seeking intervention were adequately represented by existing parties. No prejudicial error resulted from the Common Pleas Court's inaction on the motion. Therefore, assignment of error No. 3 is not well taken.

The assignments of error listed in the brief designated the New Party Appellee's Brief need not be considered by this court. The issue of mootness was considered by this court and the status quo was maintained. The new parties are asking this panel to reverse in part a prior decision of this appeals court, which we will not do. Furthermore, the judgment of the Common Pleas Court is affirmed for substantive reasons.

On consideration whereof, the court finds that substantial justice has been done the parties complaining. The judgment of the Montgomery County Common Pleas Court is modified by adding thereto a remand of the cause to the Board of County Commissioners of Montgomery County with instructions to make findings that the territory included in the annexation petition is not unreasonably large and that the general good of the territory sought to be annexed will be served if the annexation petition is granted and with further instructions to order the annexation allowed. As so modified the judgment is affirmed. Costs assessed against appellant in this court.

*Judgment accordingly.*

GUERNSEY P. J., and WILEY, J., concur.

GUERNSEY, P. J., of the Third Appellate District, and POTTER, J., of the Sixth Appellate District, sitting by designation in the Second Appellate District. WILEY, J., retired, of the Sixth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution, in the Second Appellate District.