In re PETITION FOR ANNEXATION OF 948.885
ACRES FROM LEMON TOWNSHIP.

[Cite as *In re Petition for Annexation of 948.885 Acres
from Lemon Twp.* (1995), 106 Ohio App.3d 289.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA95–01–019.

Decided Sept. 11, 1995.

*Shuler, Plank, Morgan & Brahm* and *Richard C. Brahm,* for appellants Chester Froman, petitioners' agent, and property owners.

*Sheldon A. Strand,* for appellant city of Middletown.

*Michael E. Powell,* for appellee Lemon Township Board of Trustees.

WILLIAM W. YOUNG, Judge.

Appellants, Chester Froman and the city of Middletown, Ohio, appeal the Butler County Court of Common Pleas judgment affirming the Butler County Board of Commissioners' decision to deny the annexation of 948.885 acres to the city of Middletown. The central issue for consideration involves the scope of a county board of commissioners' discretion in determining whether annexation serves the general good of the territory sought to be annexed.

In the summer of 1993, about four hundred forty property owners in Lemon Township, Butler County, Ohio, signed a petition to annex their property to the city of Middletown. Approximately eight hundred forty property owners reside in the nine-hundred-forty-eight-acre territory described in the petition. The proposed annexation territory is contiguous with Middletown along much of its northern boundary and completely adjacent to the city along its eastern boundary. Todhunter Road runs along the southern border. The Great Miami River and Ohio Route 4 represent the proposed territory's western border. The territory includes an approximately six-hundred-home subdivision in the northern

portion and an approximately two-hundred-forty-home subdivision in the southern portion. Several large tracts of farmland and a nursing home lie in between.

On September 13, 1993, the Butler County Board of Commissioners (the "Board") held a public hearing on the petition. Several Middletown officials testified as to the services the city could provide. Opponents introduced conflicting evidence and also testified that the annexation territory essentially encompassed two separate communities. They argued that the majority of residents in the southern portion of the territory adamantly opposed annexation. Many challenged the city's ability to adequately provide services to the southern portion of the annexation territory.

On December 9, the Board rejected the annexation petition. The Board noted that a creek, running east to west, divided the northern and southern subdivisions. Although sixty-seven percent of property owners north of the creek signed the annexation petition, only thirty-two percent of the property owners south of the creek did so. Further, twenty-five petitioners south of the creek withdrew from the petition before the hearing and filed for annexation to the municipality of Monroe. This reduced the percentage of petitioning owners in the southern portion of the territory to twenty-one percent. The Board concluded that in light of the evidence, the general good of the entire area would not be served.

Appellants appealed the Board's decision to the Butler County Court of Common Pleas pursuant to R.C. Chapter 2506. Appellants presented no new evidence and relied upon the record established before the Board. The common pleas court recognized that the Board could not split the proposed annexation territory into several parts and treat them as divisible units. The lower court noted that its review of the record showed that the Board considered the entire area in reaching its decision. The court concluded that the Board's decision "was supported by the preponderance of substantial, reliable and probative evidence on the whole record and that the decision was not unconstitutional, illegal, arbitrary, capricious or unreasonable." Accordingly, the common pleas court denied appellants' appeal and affirmed the Board's decision denying the annexation petition.

On appeal before this court, appellants set forth three related assignments of error. We will address appellants' third assignment of error first, and then consider their first two assignments together.

Appellants claim under their third assignment of error that the common pleas court misinterpreted its standard of review under R.C. Chapter 2506. We disagree.

A reviewing court may overturn an agency's determination that annexation will not serve the general good only upon finding that it is unconstitutional,

illegal, arbitrary, capricious, unreasonable, or unsupported by a preponderance of substantial, reliable and probative evidence. See R.C. 2506.04. The hearing before the common pleas court resembles a *de novo* proceeding in that R.C. 2506.03 provides that the appeal "shall proceed as in the trial of a civil action" and allows the parties to introduce new or additional evidence. *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 207, 12 O.O.3d 198, 201–202, 389 N.E.2d 1113, 1116–1117. The common pleas court must weigh the evidence in the record to decide whether a preponderance of evidence supports the agency's decision; however, the court may not blatantly substitute its judgment for that of the agency. *Id.*

■ Appellants cite a single sentence in the lower court's decision to suggest that the court misunderstood its standard of review. The lower court stated at one point: "In fact, an appeal pursuant to R.C. Chapter 2506 is a limited review to make sure that the proper standards of law were applied * * *." This statement is not inconsistent with the standard of review described above. See *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 35, 12 OBR 26, 30–31, 465 N.E.2d 848, 852–853. Moreover, when that statement is read in context with the lower court's entire decision, there is no question that the common pleas court understood the scope of its review and applied correct standard of review. Appellants' third assignment of error is overruled.

■ Under their first assignment of error, appellants complain that the Board and lower court erred by considering the general good of separate areas within the annexation territory. Appellants contend, under their second assignment of error, that the trial court erred in failing to find that a preponderance of the substantial, reliable and probative evidence required approval of the annexation.

R.C. 709.033(E) specifically provides that after the hearing on an annexation petition, the board of county commissioners shall approve the petition if "[t]he territory included in the annexation petition is not unreasonably large; the map or plat is accurate; *and the general good of the territory sought to be annexed will be served if the annexation petition is granted.*" (Emphasis added.) Unfortunately, the General Assembly has not defined how county commissioners are to determine whether annexation serves the "general good of the territory sought to be annexed."

Appellants suggest throughout their brief that "general good" analysis is synonymous with whether a majority of property owners sign the annexation petition. Appellants argue that county boards have no discretion to deny an annexation petition where a simple majority of property owners favor annexation and where the petitioners can demonstrate that the annexing municipality can provide "adequate services" to the territory. In support, appellants cite several

cases, including *Lariccia v. Mahoning Cty. Bd. of Commrs.* (1974), 38 Ohio St.2d 99, 67 O.O.2d 97, 310 N.E.2d 257, and *Bailey v. Bd. of Cty. Commrs.* (Nov. 30, 1984), Warren App. No. CA84–03–022, unreported, 1984 WL 3664. However, these cases are factually distinct from the case at hand and do not support appellants' argument under these circumstances.

In *Lariccia,* the Supreme Court recognized that R.C. 709.033 "directs that the ultimate focus of annexation proceedings be on 'the general good of the territory sought to be annexed,' and requires granting of the petition when it is shown that such benefit will result." *Id.,* 38 Ohio St.2d at 102, 67 O.O.2d at 99, 310 N.E.2d at 259. Contrary to appellants' assertion in their brief, however, the Supreme Court did not suggest that the general good of the annexation territory is equivalent to what is good for a majority of the owners in the area.

Appellants cite, *Bailey, supra,* for the proposition that the Board should only have considered whether Middletown could provide an "adequate level" of service to the entire area. However, this court recently explained *Bailey* in *In re Annexation of 114.031 acres from Hamilton Twp.* (May 1, 1995), Warren App. No. CA94–11–092, unreported, 1995 WL 249989. There, we rejected any suggestion in *Bailey* that "general good" analysis is limited to whether the annexing municipality can provide adequate services to the annexation territory. *Id.* at 6.

In fact, of the seven cases appellants cite for their proposition that county commissioners must approve an annexation petition where the majority favors annexation, five, including *Lariccia* and *Bailey,* involved annexation petitions where the petitioners owned *all* of the property in the proposed territory.[1] The courts emphasized that fact in each case. In one of the seven cases, *In re Kucharski* (1977), 56 Ohio App.2d 121, 10 O.O.3d 145, 381 N.E.2d 1131, thirty of thirty-four property owners sought annexation. There, the court noted that all of the opponents of the annexation, except one, resided outside the annexation territory. *Id.* at 126, 10 O.O.3d at 148, 381 N.E.2d at 1134. In another of the cited cases, seven of twelve property owners signed the annexation petition.[2]

None of the cases appellants cite involve the argument opponents presented here that municipal service delivery would be qualitatively different throughout the annexation territory. None of the cases involved a large number of property

---

**1.** *Lariccia, supra; Bailey, supra; In re Annexation of Territory in Olmsted Twp.* (1984), 14 Ohio App.3d 260, 14 OBR 289, 470 N.E.2d 912; *In re Char* (1978), 59 Ohio App.2d 146, 13 O.O.3d 185, 392 N.E.2d 1312; *In re Appeal of Char* (Sept. 16, 1977), Montgomery App. No. 5472, unreported.

**2.** *Stefanko v. Tuscarawas Twp. Bd. of Trustees* (Aug. 5, 1991), Stark App. No. CA8446, unreported, 1991 WL 160822.

owners opposed to annexation and distributed primarily within a distinct portion of the territory.

A review of R.C. 709.033 itself suggests that "general good" analysis must involve more than a determination of what a simple majority of the owners in the annexation territory desire. R.C. 709.033(C) requires, as of filing, that the number of valid signatures on the petition constitute a majority of the owners of real estate in the annexation. If the General Assembly intended for the desires of the majority of property owners to control annexation in every instance, the General Assembly would not have given county commissioners the discretion under R.C. 709.033(E) to decide whether annexation serves the "general good of the territory sought to be annexed." There would be no statutory requirement for a public hearing; the filing of a legitimate petition under R.C. 709.033(C) would be sufficient.

Appellants also complain that the Board and lower court impermissibly separated the petition into two parts and made findings as to each instead of looking at the territory as a whole. Appellants cite *In re Petition to Annex 320 Acres to S. Lebanon* (1992), 64 Ohio St.3d 585, 597 N.E.2d 463, for the proposition that county commissioners cannot consider the impact of annexation on separate portions of the annexation territory in determining whether the annexation serves the general good of the entire area.

In *In re 320 Acres*, the Ohio Supreme Court held that a reviewing court could not sever or excise an objecting landowner's property from an approved annexation petition. The court pointed out that Ohio's statutory annexation scheme does not provide for the partial allowance or disallowance of a proposed annexation. *Id.* at 599, 597 N.E.2d at 473. The court said that "[t]he statutory scheme indicates that the primary focus in evaluating the merits of a proposed petition for annexation is on the *entire area* to be annexed rather than an individual tract of land." (Emphasis *sic*.) *Id.* at 597, 597 N.E.2d at 472. The court also said that a reviewing court cannot make its own findings of fact as to the propriety of an annexation petition by deleting territory previously approved by the board of commissioners. *Id.* at 599, 597 N.E.2d at 473.

The issue in *In re 320 Acres* is not the issue here. In that case, this court remanded the cause to the lower court with instructions to approve that annexation only after an objecting landowner's property had been "severed" from the proposed annexation territory. However, both the Board and lower court here recognized that neither had the statutory authority to sever any portion of the annexation territory from the petition. Instead, the Board simply considered widespread landowner opposition to annexation within a large, distinct portion of the territory. Nothing in *In re 320 Acres* suggests that was an improper factor

for the Board to look at in determining whether annexation would serve the general good of the entire area.

R.C. 709.033 limits the discretion of county boards of commissioners to deny annexation petitions; if all criteria listed there are satisfied, the agency must approve the petition. However, "[w]hether a proposed annexation will serve the general good of the inhabitants and owners of the territory sought to be annexed is a factual determination within the discretion of the board of county commissioners." *Middletown v. McGee* (1988), 39 Ohio St.3d 284, 288, 530 N.E.2d 902, 906. Here, the Board and the lower court had to consider whether annexation would serve the general good of the entire territory, not simply that portion of the territory containing the most property owners.

The history of changes to Ohio's annexation laws reveals the General Assembly's desire to avoid fragmented local governments and to encourage orderly urban growth. *In re 320 acres, supra,* 64 Ohio St.3d at 595, 597 N.E.2d at 470. However, the desire of property owners concerning their lands is another basic consideration. *In re Annexation of 118.7 Acres in Miami Twp.,* 52 Ohio St.3d 124, 127, 556 N.E.2d 1140, 1142–1143. "In enacting the statutes governing annexation, one of the intentions of the legislature was 'to give an owner of property freedom of choice as to the governmental subdivision in which he desired his property to be located.'" *McGee, supra,* 39 Ohio St.3d at 286, 530 N.E.2d at 904, quoting *Toledo Trust Co. v. Bd. of Commrs.* (1977), 62 Ohio App.2d 121, 124, 16 O.O.3d 265, 267, 404 N.E.2d 764, 765. Limiting review to whether a simple majority of landowners in a given territory favor annexation advances neither goal. Under the circumstances here, a simple majority of the landowner's signatures on the annexation petition does not guarantee the general good of the *entire* area.

Appellants complain that a minority should not be allowed to frustrate the desires of the majority. However, appellants ignore their role in drawing the boundaries of the annexation territory. At the time of the hearing, only twenty-one percent of the owners in the southern portion of the territory petitioned for annexation. Significantly, one hundred forty-nine owners in that area signed a petition opposing annexation. The property owners opposing annexation here were not spread out evenly throughout the territory; appellants could have easily drawn or amended the petition to exclude that portion of the territory that clearly did not support annexation. Thus, appellants are largely responsible for the failure of their petition.

As noted above, the common pleas court had to determine whether a preponderance of reliable, probative and substantial evidence supported the Board's decision. R.C. 2506.04. This court's function on appeal is limited to

determining whether that court abused its discretion in making that judgment. See *Kisil, supra*, 12 Ohio St.3d at 34, fn. 4, 12 OBR at 29–30, 465 N.E.2d at 851–852; *In re Wolfe* (1992), 82 Ohio App.3d 675, 683–684, 612 N.E.2d 1307, 1312–1313. The Board and the lower court properly considered widespread lack of support and opposition to annexation in a distinct area within the territory. The Board took that evidence into consideration along with appellants' evidence regarding the benefits of annexation.

After thoroughly reviewing the record, this court concludes that the common pleas court did not abuse its discretion in affirming the Board's decision to deny appellants' annexation petition. Appellants' first and second assignments of error are overruled.

*Judgment affirmed.*

WALSH, P.J., concurs.

KOEHLER, J., dissents.

KOEHLER, Judge, dissenting.

The majority in this cause has in effect established as a principle of law a new definition of the "general good" for an area which is subject to annexation. Although recognizing that a petition for annexation must be considered in its totality and cannot be severed to determine the general good, today's decision concludes that if any portion of the annexation area does not benefit to the same extent as the rest of the area, the general good cannot be served. This holding in effect permits severance and consequently allows failure of the entire annexation as a result.

The majority cloaks its decision in the standard of review and our obligation to support the Board of Review in its factual findings. However, that is only an evasion of the real issue in this case, which is whether the Board's decision that annexation would not serve the general good is supported by reliable, probative, and substantial evidence.

The general good is what is good for a majority of the property owners in the entire area sought to be annexed. *In re Petition to Annex 320 Acres to S. Lebanon* (1992), 64 Ohio St.3d 585, 597, 597 N.E.2d 463, 471–472. This court has previously held that a determination of what is in the general good of an annexation territory "involves both a consideration of the property owners' wishes and an evaluation of the adequacy of the services which could be provided by the annexing municipality in comparison to those already being provided by the township." *In re Annexation of 114.031 Acres from Hamilton Twp.* (May 1, 1995), Warren App. No. CA94–11–092, unreported, at 6.

In this case, while more property owners in the northern annexation area signed the petition for annexation and fewer owners in the southern area signed, the *overall* result was that a majority of property owners in the entire area favored annexation. Second, in terms of emergency services, water and sewer, and road maintenance, the evidence shows that the majority of property owners would benefit from annexation. Although some areas would maintain a temporary status quo for services such as water and sewer, there is absolutely no evidence that Middletown cannot provide adequate services or that comparatively, or that annexation would have a negative effect on services to anyone. See *Bailey v. Bd. of Cty. Commrs.* (Nov. 30, 1984), Warren App. No. CA84–03–022, unreported; *114.031 Acres, supra.*

The discretion of the county commissioners is subject to the standards set forth in R.C. 709.033, in that an annexation petition must be granted if those standards have been met. *Lariccia v. Mahoning Cty. Bd. of Commrs.* (1974), 38 Ohio St.2d 99, 101–102, 67 O.O.2d 97, 98–99, 310 N.E.2d 257, 258–259. In this case, it is apparent that the petitioners have established by a preponderance of the evidence that annexation to the city of Middletown will be a great benefit to the majority of property owners within the area, including increased benefits to the owners resisting annexation. There was insufficient evidence submitted by opponents to offset the advantages to the entire area established by appellants.

Therefore, I would hold that the lower court abused its discretion in concluding that the Board's decision was supported by reliable, probative, and substantial evidence, and would reverse the decision of the common pleas court.