## In re PETITION FOR ANNEXATION OF 368.08 ACRES OF LAND, MORE OR LESS, IN SPRINGFIELD TOWNSHIP.

[Cite as *In re Petition for Annexation of 368.08 Acres in Springfield Twp.* (1997), 124 Ohio App.3d 256.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 96CA2238.

Decided Nov. 25, 1997.

258

*Cutright & Cutright* and *James K. Cutright,* for appellants.

*Manes, Musitano, Schrader & Assaf* and *Alfred E. Schrader,* for appellee Springfield Township Board of Trustees.

*Wright & Logan Co., L.P.A.,* and *J. Anthony Logan,* for appellees Lawrence Vaughan and Merrill Vaughan.

STEPHENSON, Presiding Judge.

This is an appeal from an August 1, 1996 judgment entered by the Common Pleas Court of Ross County, Ohio, enjoining annexation of 368.08 acres of land in Springfield and Scioto Townships to the city of Chillicothe. The following errors are assigned for our review:

"I. The trial court's decision was contrary to law.

"II. The trial court's decision was not supported by a preponderance of reliable, probative and substantial evidence, or in the alternative, the trial court utilized the wrong standard of review."

The record reveals the following facts pertinent to this appeal. On November 16, 1993, a petition for annexation of portions of Springfield and Scioto Townships to the city of Chillicothe was filed with the Ross County Board of Commissioners. The petition was filed by what was claimed to be a majority of the landowners in the territory sought to be annexed.

The petition was entered on the record of the board of commissioners on November 22, 1993, and a public hearing on the petition was conducted on February 7, 1994. At the February 7, 1994 hearing, the petitioners moved to amend the petition to correctly state the number of landowners in the affected area.[1] Additionally, the petitioners submitted affidavits of two landowners indicating that the landowners had not signed the petition but were in favor of annexation at the time of the filing of the petition. Opponents of the annexation presented evidence that the annexation was not for the general good of the area

---

1. The original petition indicated that there were thirty-four landowners in the territory. The amended petition listed forty-nine.

to be annexed and that the area was unreasonably large. Additionally, the opponents argued that the petition was not signed by a majority of the landowners and that notice requirements had not been met.

On April 11, 1994, the board of commissioners adopted resolutions allowing the annexation to proceed. Thereafter, on June 10, 1994, Lawrence and Merrill Vaughan, two landowners in the area to be annexed who are opposed to the annexation, along with representatives of Springfield Township Trustees, filed a statutory injunction action pursuant to R.C. 709.07.[2] On June 13, 1994 the trial court stayed the annexation pending resolution of the R.C. 709.07 action, and on August 1, 1996, the court granted appellees' petition for permanent injunction. Appellants filed a timely notice of appeal to this court on August 26, 1996.

We begin our analysis with a brief overview of the relevant Ohio annexation law. Annexation is a statutory process governed by R.C. Chapter 709. R.C. 709.02 permits the owners of land adjacent to a municipal corporation to file an annexation petition with the board of county commissioners. Pursuant to R.C. 709.02, the petition must contain:

"(A) A full description and accurate map or plat of the territory sought to be annexed;

"(B) A statement of the number of owners of real estate in the territory sought to be annexed;

"(C) The name of a person or persons to act as agent for the petitioners."

A public hearing on the petition is held before the board of county commissioners at which both proponents and opponents of the annexation are permitted to offer evidence. R.C. 709.032. R.C. 709.033 then requires the board of county commissioners to approve the annexation petition if all of the following criteria are met:

"(A) The petition contains all matter required in section 709.02 of the Revised Code.

"(B) Notice has been published as required by section 709.031 of the Revised Code.

---

2. On June 10, 1994, appellees moved to consolidate the instant R.C. 709.07 action with a previously filed R.C. 2506.01 direct appeal. According to appellants' brief, the R.C. 2506.01 appeal was subsequently dismissed by Civ.R. 41 stipulation. This stipulation is not a part of the record before us. However, it is evident from the trial court's August 1, 1996 judgment entry that the matter before the court was the R.C. 709.07 action only.

We note that an R.C. 2506.01 appeal is the proper remedy for a party aggrieved by the *denial* of an annexation petition. An R.C. 709.07 action is the exclusive remedy for persons challenging the *approval* of an annexation petition. *In re Petition to Annex 320 Acres to S. Lebanon* (1992), 64 Ohio St.3d 585, 597 N.E.2d 463, paragraph one of the syllabus.

"(C) The persons whose names are subscribed to the petition are owners of real estate located in the territory in the petition, and as of the time the petition was filed with the board of county commissioners the number of valid signatures on the petition constituted a majority of the owners of real estate in the territory proposed to be annexed.

"(D) The municipal corporation to which the territory is proposed to be annexed has complied with division (B) of section 709.031 of the Revised Code.

"(E) The territory included in the annexation petition is not unreasonably large; the map or plat is accurate; and the general good of the territory sought to be annexed will be served if the annexation petition is granted."

If the petition is approved by the board of county commissioners, "any person interested" and/or "any other person who appeared in person or by an attorney" at the hearing may petition the court of common pleas to enjoin the annexation. R.C. 709.07. R.C. 709.07 sets forth the standard of review to be applied by the court of common pleas, providing as follows:

"(D) The petition for injunction shall be dismissed unless the court finds the petitioner has shown by clear and convincing evidence that the annexation would adversely affect the legal rights or interests of the petitioner, and that:

"(1) There was error in the proceedings before the board of county commissioners pursuant to section 709.032 or 709.033 of the Revised Code, or that the board's decision was unreasonable or unlawful; or

"(2) There was error in the findings of the board of county commissioners * * *.

"(E) If the court finds all the matters required in divisions (D)(1) and (2) of this section it shall make an order enjoining the auditor or clerk of the annexing municipal corporation from presenting the annexation application and related papers to the legislative authority."

Having set forth the applicable statutory scheme, we now turn to appellants' assignments of error. We begin by noting that in both assignments of error appellants essentially set forth the same argument, i.e., that the trial court erred in concluding that the annexation petition lacked the requisite number of landowner signatures. We will, therefore, address appellants' assignments of error together.

We first wish to clarify and correct a fundamental misconception found in appellants' brief. Appellants, citing our prior decision in In re Appeal of Ankrom (Mar. 26, 1993), Pickaway App. No. 92CA15, unreported, 1993 WL 97777, argue that the trial court utilized the incorrect standard of review. In Ankrom, we stated as follows:

"Upon appeal, a hearing before the court of common pleas resembles a de novo proceeding. There is liberal provision for the introduction of new or additional evidence. However, the court in weighing the evidence may not substitute its judgment for that of the administrative agency. If there is a preponderance of reliable, probative and substantial evidence, the court of common pleas must affirm the decision of the agency. *Dudukovich v. Housing Authority* (1979), 58 Ohio St.2d 202 [12 O.O.3d 198, 389 N.E.2d 1113]."

■ Appellants' reliance on *Ankrom* is misplaced. *Ankrom* involved an appeal, pursuant to R.C. 2506.01, of the denial of an annexation petition. The instant cause involves a petition to enjoin an approved annexation, pursuant to R.C. 709.07. See fn. 2, *supra*. These two actions involve distinctly different standards of review. In *In re Petition to Annex 320 Acres to S. Lebanon*, 64 Ohio St.3d at 594, 597 N.E.2d at 470, the Ohio Supreme Court contrasts the different standards of review as follows:

" * * * R.C. 709.07 places an increased burden upon the party bringing the action to prove that the board of county commissioners erred in its determination. In essence, the complaining party seeking to enjoin an approved annexation must establish by clear and convincing evidence that the annexation would adversely affect the petitioner's legal rights or interests, and there was error in the board proceedings, or the result reached by the board was unreasonable or unlawful. This standard of review is highly deferential to the board of county commissioners. However, when a party brings a Section 2506 appeal a virtual *de novo* examination of the record is conducted by the court pursuant to R.C. 2506.04."

In the instant case, the trial court enjoined the annexation, finding, in pertinent part, as follows:

"The court finds by clear and convincing evidence that the annexation would adversely affect the legal rights and interests of the plaintiffs and that there was error in the proceedings and findings of the board."

Thus, the trial court articulated the correct standard of review, as set forth in R.C. 709.07, and as outlined in *In re Petition to Annex 320 Acres to S. Lebanon*, *supra*. For the reasons that follow, however, we find that the trial court exceeded the scope of this standard.

■ In the instant case, the trial court enjoined the annexation, finding that "[t]he petition for annexation was not signed by a majority of real estate owners as only 20 of the 49 real estate owners have affixed their signature thereto." [3] In

---

**3.** The court expressly declined to address the substantive issues of whether the annexation is for the general good of the area or is unreasonably large, finding these issues to be moot in

concluding that less than a majority of landowners signed the petition for annexation, the trial court disallowed (1) one signature of John Molnar, who signed in two separate capacities, as an individual owner of one parcel and as the agent for John Molnar, Inc., the owner of two other parcels; (2) the signatures of four owners who wished to withdraw their names from the petition; (3) the signatures of two landowners who wished to add their names to the petition; and (4) the signature of an owner who died prior to the filing of the petition.[4]

In regard to the signatures of John Molnar, individually and John Molnar as the agent for John Molnar, Inc., the trial court found as follows:

"The court will note that John R. Molnar Inc. and John Molnar are listed on separate lines on the list of property owners on the amended petition, yet are counted only as one property owner. Hence, John Molnar Inc./John Molnar is entitled to only one signature."

R.C. 709.02 defines "owner" as "any adult individual seized of a freehold estate in land who is legally competent and any firm, trustee, or private corporation that is seized of a freehold estate in land." In determining the number of "owners" of real estate in an area to be annexed, each tenant in common is entitled to be counted as an owner. 1971 Ohio Atty.Gen.Ops. No. 71–004, at 2–10; *In re Annexation of the Territory of Riveredge Twp. to Fairview Park* (1988), 46 Ohio App.3d 29, 33, 545 N.E.2d 1287, 1292–1293, and each owner is to be counted only once regardless of the number of parcels owned. 1971 Ohio Atty.Gen.Ops. No. 71–004, at 2–10. Thus, John Molnar, an adult individual, and John Molnar, Inc., a private corporation, are each entitled to be counted as an owner, and each is entitled to one signature, if each owns a freehold interest in land in the area to be annexed.[5]

---

light of the court's conclusion that the petition lacked the requisite number of landowner signatures.

4. At the outset, we note that the board of county commissioners was not required to make affirmative written findings as to the R.C. 709.033 criteria. See *Symmes Twp. Bd. of Trustees v. Hamm* (Nov. 6, 1996), Hamilton App. No. C–960169, unreported, 1996 WL 637831; *In re Annexation of 14.5618 Acres of Land in Brunswick Hills Twp.* (May 20, 1992), Medina App. No. 2058, unreported, 1992 WL 112595; *Cooperider v. Licking Cty. Bd. of Commrs.* (Mar. 11, 1992), Licking App. No. CA–3700, unreported, 1992 WL 61584; *Symmes Twp. Bd. of Trustees v. Dee* (May 22, 1991), Hamilton App. No. C–900275, unreported, 1991 WL 84198; *Canton Twp. Bd. of Trustees v. Mallonn* (Mar. 25, 1985), Stark App. No. CA–6535, unreported, 1985 WL 9169. While the board did find, *inter alia,* that "as of the time the Petition was filed with the board of county commissioners, the number of valid signatures on the Petition constituted a majority of the owners of real estate in the territory proposed to be annexed," the board made no written findings as to precisely which of the proffered signatures were accepted as valid and which were not.

5. R.C. 709.02 expressly excepts from the definition of "owner" any "person, firm, trustee, or private corporation that has become an owner of real estate by a conveyance the primary

Appended to the amended petition in the record before us is a list, or chart, identifying and enumerating the property owners in the area to be annexed. On the chart, John Molnar, individually, is identified as the sole owner of parcel number 22. John Molnar, Inc. is identified as the sole owner of parcels 11 and 23. The chart designates John Molnar, Inc. and John Molnar as, respectively, owners number 14 and 27 of the forty-nine enumerated owners.[6] Thus, contrary to the trial court's factual finding, John Molnar and John Molnar, Inc. were each identified as, and counted as, a landowner in the petition. Each is entitled to a signature on the petition. The trial court erred in disallowing one of the signatures.

The trial court also disallowed the signatures of four landowners who signed the petition, but who later filed written requests to withdraw their signatures. The trial court erred.

R.C. 709.03 provides, in pertinent part, as follows:

"Any person who signed the petition for annexation may remove his signature by filing with the clerk of the board of county commissioners a written notice of withdrawal of his signature *within twenty days* after [written notice of the filing of the annexation petition] is delivered to the clerk of the township in which he resides. *Thereafter signatures may be withdrawn or removed only in the manner authorized by section 709.032 of the Revised Code.*" (Emphasis added.)

R.C. 709.032 provides, in pertinent part, as follows:

"At the hearing any owner who signed the petition for annexation may appear, and * * * testify orally that his signature was obtained by fraud, duress, misrepresentation, * * * or undue influence. * * * If a majority of the county commissioners find that such signature was obtained under circumstances that did constitute fraud, duress, misrepresentation, or undue influence, they shall find the signature to be void, and shall order it removed from the petition as of the time the petition was filed."

In the instant case, the four landowners who wished to withdraw their names owned land in Scioto Township. Notice of filing of the annexation petition was delivered to the Scioto Township Clerk on November 19, 1993. The four written notices of withdrawal were each filed with the clerk of the board of county

---

purpose of which is to affect the number of owners required to sign an annexation petition." There is no allegation that such is the case herein.

**6.** As stated above, each landowner is entitled to only one vote regardless of the number of parcels owned. Therefore, line 11 designates John Molnar, Inc. as owner number 14, while line 23 designates John Molnar, Inc. as "already counted." It is likely that the trial court overlooked line 11, mistakenly believing that line 23's "already counted" designation referred to John Molnar's designation as an owner on the preceding line, line 22.

commissioners on December 10, 1993, one day after the R.C. 709.03 twenty-day period had passed. None of the four landowners appeared at the hearing to offer testimony pursuant to R.C. 709.032.[7] Nevertheless, the trial court concluded that the landowners should be permitted to withdraw their signatures, finding as follows:

"The court finds that the four individuals who filed for withdrawal of their signatures did so 59 days prior to the board of commissioners' hearing. It was clear well prior to the commencement of the hearing that the four aforementioned individuals no longer favored annexation. The requirement that such signatures can only be withdrawn within the prescribed 20 day period is construed to be only directory, with its purpose being only to serve notice. The commissioners were provided such notice well in advance of hearing so that the signature withdrawals would not prejudice anyone. The withdrawals were filed in sufficient time prior to hearing and only one day beyond the 20 day period. Given these circumstances, it would be inequitable to deny [the four landowners] the right to withdraw their names. Holding otherwise would forever bind them to a decision they no longer found agreeable."

With this passage we respectfully disagree in several respects. First, we note that landowners are not "forever bound" if they miss the twenty-day R.C. 709.03 deadline. Signatories to an annexation petition are provided two opportunities to remove their names from the petition. As is reflected above, in addition to the R.C. 709.03 twenty-day withdrawal period, R.C. 709.032 provides that the board of county commissioners must order the names of signatories removed if the signatories appear at the annexation hearing and show that their signatures were obtained by fraud, duress, misrepresentation, or undue influence. Moreover, even if the R.C. 709.03 deadline is missed and fraud, duress, misrepresentation, or undue influence cannot be established pursuant to R.C. 709.032, the signatories may still appear at the annexation hearing to contest the granting of the prayer of the petition, pursuant to R.C. 709.032.[8] Thus, we find the trial court's equitable concerns to be largely unfounded.

---

7. One of the four landowners submitted a letter indicating that she would not be able to attend the February 7, 1994 hearing but that she did wish to withdraw her name from the petition. We note, however, that even if the letter were to be considered in lieu of testimony, the letter does not allege that the landowner's signature was obtained by fraud, duress, misrepresentation, or undue influence.

8. The "general good" analysis required by R.C. 709.033(E) involves more than a determination of whether a simple majority of land owners have signed the petition. See *In re Petition for Annexation of 948.885 Acres from Lemon Twp.* (1995), 106 Ohio App.3d 289, 295, 665 N.E.2d 1165, 1168–1169. Thus, even if a landowner is unsuccessful in having his signature removed from the petition, he can still argue that the annexation would not serve the general

Second, we disagree with the trial court's conclusion that the twenty-day withdrawal period in R.C. 709.03 is merely directory. Had the General Assembly remained silent regarding withdrawals after the twenty-day period, we might well agree with the trial court. However, the General Assembly did not remain silent on this issue. The General Assembly, in the final sentence of R.C. 709.03, prescribes quite specifically the *exclusive* procedure for removal of signatures outside the twenty-day period: "Thereafter signatures may be withdrawn or removed *only* in the manner authorized by section 709.032 of the Revised Code," *i.e.*, only if a majority of the county commissioners find that the signatures were "obtained under circumstances * * * constitut[ing] fraud, duress, misrepresentation or undue influence ." [9] The plain language of R.C. 709.03 and 709.032 belies a conclusion that a signatory may withdraw his signature, at will, after expiration of the twenty-day period set forth in R.C. 709.03. This same language also leads us to conclude that there is no discretion in the board of county commissioners to accept late "at will" withdrawals. The board of county commissioners may factually determine whether purported withdrawals were made within the statutory twenty-day period and/or whether signatures were obtained through fraud, duress, misrepresentation or undue influence. Once such factual determinations are made, however, the board of county commissioners must allow or disallow the withdrawals as provided by statute.

Third and finally, even if we were inclined to agree with the trial court that the twenty-day time period in R.C. 709.03 is merely directory, we would still find the trial court's disallowance of the signatures to be in error. In the instant case none of the four withdrawing signatories offered any explanation for their failure to withdraw within the twenty-day period, and none of the signatories bothered to appear at the annexation hearing. But, see, fn 7. Given this, any "discretionary" decision on the part of the board to disallow the withdrawals would be fully justified and would not, therefore, constitute error "in the proceedings" or "findings of the board" or an "unreasonable or unlawful" decision, as is required to be shown before the court of common pleas may grant an R.C. 709.07 injunction. Thus, even if the board had the discretion to allow the withdrawals, its refusal to do so would not support the granting of an R.C. 709.07 injunction under the facts of this case. Accordingly, we find that the trial court erred in refusing to count these four signatures.

---

good of the area to be annexed, that the territory included in the petition is unreasonably large, etc.

9. It would appear at least arguable that the final paragraph of R.C. 709.032 would also permit removal of signatures via amendment of the petition, assuming that consent of the agent for the petitioners can be obtained.

The trial court also disallowed the signatures of two landowners who did not sign the original petition, but whose affidavits were submitted at the annexation hearing attesting to the fact that they desired that their names be included on the petition as property owners consenting to annexation. The trial court found as follows:

"The same equitable principles [addressed in the trial court's discussion of the four purported withdrawals] should be applied in regards to the attempted inclusion of the additional signatures at hearing. The additional signatures were presented without notice during the hearing. This was unlike the situation of the withdrawn signatures which were filed as part of the record and known to the board prior to hearing. Any such additional signatures favoring annexation could have been presented prior to hearing. The additional signatures presented at hearing ought not be considered."

Again, we must respectfully disagree with the conclusion of the trial court. While R.C. 709.03 and 709.032 restrict a landowner's right to withdraw his signature from an annexation petition, nowhere in the statutory scheme does there appear a corresponding curtailment of a landowner's right to add his signature.[10]

We note that the Ohio annexation statutes were substantially revised in 1967 to include, *inter alia*, the aforementioned provisions limiting signature withdrawals. See Am.Sub.S.B. No. 220, 132 Ohio Laws, Part I, 362 *et seq.*; Part II–III, 2222. Prior to these revisions, the statutes were altogether silent regarding the withdrawal or addition of landowner signatures. The discretionary power of boards of commissioners to permit the withdrawal or addition of signatures was, however, recognized at common law. See *Chadwell v. Cain* (1959), 169 Ohio St. 425, 8 O.O.2d 449, 160 N.E.2d 239.

It must be presumed that the General Assembly, in revising the annexation statutes, was mindful of the common law. See *Davis v. Justice* (1877), 31 Ohio St. 359, 364, 1877 WL 32; *Walden v. State* (1989), 47 Ohio St.3d 47, 56, 547 N.E.2d 962, 970 (Resnick, J., concurring in part and dissenting in part); *State ex rel. Wilson v. Shelby Cty. School Dist. Bd. of Edn.* (1956), 102 Ohio App. 541, 543, 3 O.O.2d 82, 83–84, 144 N.E.2d 323, 324–325. We will not presume that the General Assembly intended to abrogate or derogate the common law. Such legislative intent must plainly appear. *State ex rel. Morris v. Sullivan* (1909), 81 Ohio St. 79, 90 N.E. 146, paragraph three of the syllabus. We

---

**10.** Indeed, the statutory scheme allows for liberal amendment of annexation petitions. R.C. 709.032 provides that a "petition may be amended *without further notice* by leave of the county commissioners with the consent of the agent for the petitioners where such amendment does not add to the territory embraced in the original petition." (Emphasis added.)

can only conclude, therefore, that the General Assembly, in amending the statutes to restrict the withdrawal of signatures but not the addition thereof, intended to perpetuate the existing common law regarding the addition of signatures. Accordingly, we find that the annexation petition could properly be amended at the February 7, 1994 hearing to include additional signatures, without further notice, by leave of the county commissioners.[11] Whether leave should be granted to allow the additional signatures was a decision resting within the discretion of the board of county commissioners. The record does not support a conclusion that allowance of the signatures would constitute error "in the proceedings" or "findings of the board" or that the decision to allow the signatures would be "unreasonable or unlawful." Accordingly, we find that the trial court erred in concluding that these signatures "ought not be considered."

Last, we turn to the issue of the signature of decedent landowner Edward Graves. The record reflects that Edward Graves and his wife, Gladys, owned, as tenants in common, property designated in the petition as parcel number 30. Both of the Graveses signed the petition for annexation and were listed as, and counted as, landowners in the amended petition for annexation. However, opponents of the annexation presented at the February 7, 1994 hearing a certificate of death, reflecting that Edward Graves died on October 8, 1993.

In regard to Graves's demise, the trial court found as follows:

"The court further notes that Edward E. Gray [*sic*], one of the original signatories of the original petition, became deceased on October 8, 1993. His death preceded the filing of the annexation petition, and therefore, his signature should not count."

As is set forth more fully above, R.C. 709.033 provides that the board of county commissioners shall allow a proposed annexation *if* it finds, *inter alia*, that "[t]he persons whose names are subscribed to the petition are owners of real estate located in the territory in the petition, and as of the time the petition was

---

11. Appellees, citing R.C. 709.033(C), submit that "[w]hen a change is made to the petition and the amendment is granted by the board of commissioners, the hearing on the petition is still dependent upon a majority of the owners of the real estate in the remaining territory having signed the annexation petition, as of the time it was filed." R.C. 709.033 provides:

"After the hearing on a petition to annex, the board of county commissioners shall enter an order upon its journal allowing the annexation if it finds that:
"* * *
"(C) The persons whose names are subscribed to the petition are owners of real estate located *in the territory in the petition, and as of the time the petition was filed* with the board of county commissioners the number of valid signatures on the petition constituted a majority of the owners of real estate in the territory proposed to be annexed." (Emphasis added.)
Contrary to appellees' interpretation of this statute, we find that the phrase "as of the time the petition was filed" refers not to when the signatures were affixed to the petition, but, rather, refers to when the signatures must have constituted a majority.

filed with the board of county commissioners the number of valid signatures on the petition constituted a majority of the owners of real estate in the territory to be annexed." At the time of the filing of the annexation petition, Graves had been deceased for nearly six weeks. Graves was not, therefore, an owner of real estate at the time of filing and his signature could not, therefore, be "valid." Thus, we agree with the trial court's disallowance of his signature. We note that appellants do not assign error to, or otherwise complain of, the trial court's disallowance of Graves's signature.[12]

In summary, we find that the board of county commissioners could properly have accepted as valid the seven signatures heretofore discussed, in addition to the twenty signatures allowed as valid by the trial court.[13] Thus, the board of county commissioners could have concluded that twenty-seven valid signatures were affixed to the petition for annexation, which constitutes a majority of the forty-nine total landowners. Accordingly, we hold that the court of common pleas erred in concluding, under the highly deferential standard set forth in R.C. 709.07(D), that the petition for annexation was not signed by a majority of real estate owners.

Having found appellants' assignments of error to be well taken, we hereby reverse the decision of the trial court and remand the cause for determination of the outstanding issues raised in the R.C. 709.07 injunction petition.

*Judgment reversed.*

PETER B. ABELE, J., concurs.

HARSHA, J., concurs in judgment only.

---

12. While the trial court properly recognized the invalidity of Graves's signature, we observe that the trial court failed to recognize the impact of Graves's death on the calculation of total landowners in the territory to be annexed. The trial court found, and the parties hereto agree, that the amended petition correctly reflects a total of forty-nine landowners in the territory. However, given the uncontested fact that Graves, one of the forty-nine purported landowners, was deceased at the time of the petition's filing, the total listed number of landowners may or may not be correct. The total is correct *only* if parcel thirty remained jointly owned by two individuals following Graves's death. We find no evidence in the record before us regarding the ownership of parcel 30 after Graves's death. However, because neither of the parties has raised this issue, we presume that the number of landowners listed on the petition is, in fact, correct.

13. While not addressed in the briefs, we note that the trial court allowed the "signatures" of Ted and Jane Dunn. The face of the petition reveals that one or the other of these two individuals signed the petition "Ted & Jane Dunn." Although both names appear on the petition, only one signature actually appears. Thus, one of these names should not be considered when counting the number of signatures supporting the petition. After deleting one of these names, twenty-six possible signatories would remain, which is still a majority of the total forty-nine landowners.