LIBIS ET AL., APPELLEES, *v.* BOARD OF ZONING APPEALS OF
AKRON ET AL., APPELLANTS.

[Cite as Libis v. Bd. of Zoning Appeals
(1972), 33 Ohio App. 2d 94.]

(No. 6842—Decided July 19, 1972.)

*Messrs. Blakemore, Rosen, Miller & Norris,* for appellees.

*Mr. William R. Baird,* director of law, and *Mr. Harry A. Tipping,* for appellants.

HUNSICKER, J. The Akron Congregation of Jehovah's Witnesses, North Hill Unit, Inc., wish to erect a church building on land which they have an option to purchase from Evelyn S. Libis. This land, irregular in shape, is 86 feet front and 772 feet deep along the south line. The north line is approximately the same depth and is an arc which runs to a point where it meets the end of the south line of the property. The east boundary is the point where the north and south lines meet. The area covers a total of 1.185 acres of land on the east side of North Portage Path, adjacent to and south of railroad tracks of the A. C. & Y. Railway. The land is located in a single family residence zone.

An application was made to the appropriate agency of the city of Akron for an institutional use of the land; to wit, the building of a church. The plans for the church building were duly recommended for approval by the department of planning and urban renewal of the city planning commission of Akron, Ohio, such recommendation containing thirteen conditions. The church accepted those conditions. The recommendation was then transmitted to the board of zoning appeals for action, pursuant to the jurisdiction conferred on such board by the charter of the city of Akron. After a hearing and consideration, the board of zoning appeals denied the application for permission to construct the church. As a matter of course, a building permit was denied by the department of building inspection of Akron, Ohio.

An appeal from the order of the board of zoning appeals, pursuant to R. C. 2506.01 *et seq.*, was filed in the Common Pleas Court of Summit County, Ohio. A hearing was held on such administrative appeal, and that court determined the following:

"* * * The record before the Zoning Board of Ap-

peals fails to show that an institutional use in this single family residential district would seriously injure the appropriate use of the neighboring property * * *.

"Accordingly, this court finds that the denial of the appeal of the appellants by the Board of Zoning Appeals was unsupported by the preponderance of substantial, reliable and probative evidence on the whole record. * * *"

That court reversed the decision of the Akron board of zoning appeals, and entered a final judgment for the plaintiffs, appellees herein, with an order to the board of zoning appeals to grant the requested variance, subject to the conditions recommended by the planning commission.

From that order, an appeal is lodged in this court by the defendants, appellants herein. They say that the trial court erred: (1) "in not allowing the three members of the Akron Zoning Board of Appeals to testify"; (2) "in ordering that a 'variance' be made to the zoning ordinance."

We have before us that which the Common Pleas Court considered in reaching its conclusion; to wit a transcript of the proceedings before the board of zoning appeals, to which is attached the recommendation of the planning commission, and a transcript of proceedings held in the presence of the court.

The transcript of proceedings before the Court of Common Pleas consisted of the testimony of one James Allen Alkire, director of planning and urban renewal; the refusal of that court to permit three members of the board of zoning appeals to be called as on direct examination, and interrogated as to their reason for not approving the request for a variance; and much conversation between the court and counsel. The testimony of Mr. Alkire offered nothing that was not already a part of the proceeding before the board of zoning appeals.

The appeal to the Court of Common Pleas is governed by R. C. Chapter 2506, entitled "Appeals from Orders of Administrative Officers, and Agencies." R. C. 2506.03 sets out specifically the order by which the trial proceeds, and the evidence that may be received. No provision is made

for an interrogation of the members of the administrative body that made its ruling. Nothing in the statute prevents a member of that body from stating for the transcript, at the end of that hearing, the reasons for arriving at his conclusion.

We have found no Ohio case in point, although there are some federal cases on the subject. A leading case from the Supreme Court of the United States, written by Mr. Justice Frankfurter, *United States* v. *Morgan*, 313 U. S. 409, at 422, states, in part:

"The proceeding before the Secretary 'has a quality resembling that of a judicial proceeding.' * * * Such an examination of a judge would be destructive of judicial responsibility. * * * Just as a judge cannot be subjected to such a scrutiny * * * so the integrity of the administrative process must be equally respected. * * *"

This statement was in response to the cross-examination of the Secretary of Agriculture, who was required to fix certain administrative rates for a stockyard.

We believe that the converse is also true, and that an administrative officer, sitting in a quasi-judicial capacity and required to reach a conclusion based on evidence presented to him, cannot be called by either party to the proceedings and examined as to his mental processes in arriving at such conclusion. See Anno. 18 A. L. R. 2d 606 at 624, for a collation of cases on this subject. Also, *Chicago, B. & Q. Ry. Co.* v. *Babcock*, 204 U. S. 585.

Presently, under the Federal Administrative Procedure Act, the above rule has been relaxed, but in *Citizens to Preserve Overton Park* v. *Volpe*, 401 U. S. 402, at 420, the court said: " * * * inquiry into the mental processes of administrative decision makers is usually to be avoided."

We do not find prejudicial error in refusing to permit the direct examination of the members of the board of zoning appeals for the purpose of giving reasons why they reached a conclusion adverse to the application for a variance.

As we indicated above, the hearing on appeal is limited

to the procedure set out in R. C. 2506.03. A court (in this case the Court of Common Pleas), if it wishes to reverse, as it did here, must, under R. C. 2506.04 "* * * find that the order, adjudication or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record. * * *"

Does that court have the authority to then order the board of zoning appeals to grant the requested variance?

The answer to that question is found in the sentence of the statute which authorizes the court to remand the cause to the body appealed from, with instructions to enter the order requested. The fact that the power granted by the words of the statute are in the disjunctive does not make it erroneous. The Common Pleas Court found that the order of the board of zoning appeals was "unsupported by the preponderance of substantial, reliable and probative evidence on the whole record."

The cases cited by the defendants are not authority for the proposition that the Common Pleas Court did not have the power to order a variance.

The rule regarding the duty of a court reviewing a decision of a board of zoning appeals, with a citation of authorities, is correctly stated in 58 Ohio Jurisprudence 2d 632, 633, Zoning, Section 178, as follows:

"In reviewing a decision of a board of zoning appeals on a matter committed by the zoning regulations to the discretion of such board, the courts will presume that the decision is reasonable and valid. In the absence of evidence that the decision was an abuse of discretion, or an act in excess of the power of the board, or was unreasonable under all the circumstances, the board's decision will be upheld."

In *State, ex rel. Anshe Chesed Congregation*, v. *Bruggemeier*, 97 Ohio App. 67, at 74, the court, in a situation where most of the members lived out of the area, said:

"The membership of a religious institution is not confined within municipal boundaries. People seek out a church

of their choice without concern as to the political subdivision in which it may be located."

In that case, a very small percent of the members lived near the church.

When we review the transcript of the hearings held by the board of zoning appeals, and the evidence there presented by comment of interested parties and not by verbatim interrogation, we must first note the recommendation of the planning commission made April 2, 1971, in response to an application made February 19, 1971, for a structure providing 140 seats, and 44 off-street parking spaces.

On May 21, 1971, the transcript shows, in the first hearing before the board of zoning appeals, the complete recommendation of the planning commission. It states as follows:

"Planning Commission Action: Approval with conditions on April 2, 1971 under file PC-70131-IS."

Under comments, there is a statement that: "plans filed with the appeal show a one-story structure with 195 seats would be built along the southerly property line * * *. A total of 51 parking spaces * * *."

This apparently was the recommendation of the planning commission, along with many conditions, which the church accepted.

One of the many conditions of approval of the planning commission was with respect to the easement of The East Ohio Gas Company over the land upon which the church is to be built. A letter of that company, dated April 20, 1971, provides an agreement in principle that satisfies the condition of the planning commission.

There is no evidence before us to counter the approval of the traffic engineer regarding traffic problems, except a "guess" on the part of neighbors, or the board members who voted against approval. There is no evidence to counter the statement that there is 500 feet visibility south of the proposed driveway into these premises. There is no evidence to counter the statement that this plot of ground

is large enough to accomodate the small church planned to be erected thereon.

Legal matters are determined by facts, not by belief or desires. Such facts as the lower court had were all in favor of the plaintiffs. In such a state of the record, we must reject the second assignment of error.

Our examination of all of the claimed errors shows none prejudicial to the substantial rights of the defendants. The judgment must, therefore, be affirmed.

*Judgment affirmed.*

DOYLE, P. J., and VICTOR, J., concur.

HUNSICKER, J. (Retired, assigned to active duty under authority of Section 6(C), Article IV, Constitution.)