**WITSCHEY, Agent, Appellant,**

v.

**MEDINA COUNTY BOARD OF COMMISSIONERS et al., Appellees.**

[Cite as *Witschey v. Medina Cty. Bd. of Commrs.*,
169 Ohio App.3d 214, 2006-Ohio-5135.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 06CA0009–M.

Decided Oct. 2, 2006.

Craig S. Horbus and Jeffrey T. Witschey, for appellant.

Dean Holman, Medina County Prosecuting Attorney, and James R. Bennett II and Katharina E. Devanney, Assistant Prosecuting Attorneys, for appellee.

BOYLE, Judge.

{¶ 1} Appellant, Jeffrey Witschey, appeals from the judgment of the Medina County Court of Common Pleas that affirmed the decision of appellee Medina County Board of Commissioners to deny a petition for annexation. This court affirms.

I

{¶ 2} Appellant, Jeffrey Witschey, as agent for the petitioners, filed a petition for annexation of 177.1326 acres of land ("territory") from appellee Wadsworth

Township ("township") to appellee city of Wadsworth ("city"). The petition was heard and decided by appellee Medina County Board of Commissioners ("board"). The land that is the subject of the petition is adjacent to the city of Wadsworth, located in the southwest corner of Seville Road and Mt. Eaton Road (S.R. 94) in Wadsworth Township, Medina County, Ohio. The 177.1326 acres are owned by 43 persons. The petition was signed by 24 of the landowners, thus meeting the 51 percent owner approval required for filing a petition.

{¶ 3} The board held hearings on the petition on July 19, August 2, and August 16, 2004, and evidence regarding the petition was presented at those hearings. The board issued its rejection of the petition on August 23, 2004, "finding that the general good of the territory to be annexed would not be served, and the benefits did not outweigh the detriments." Appellant timely filed a notice of appeal to the Medina County Court of Common Pleas pursuant to R.C. Chapter 2506.

{¶ 4} The trial court accepted briefs and heard oral arguments on the issues from both sides. In its July 14, 2005 judgment entry, the trial court found that there were insufficient facts in the board's conclusions of facts to conduct a meaningful review and remanded the cause to the board with instructions to amend its conclusions of fact. The board complied by filing amended conclusions of fact on November 17, 2005. The trial court held a second oral argument in the matter on December 22, 2005. After considering the entire record, the briefs, and the oral arguments, the trial court affirmed the board's decision to deny the petition for annexation.

{¶ 5} Appellant timely appealed, asserting three assignments of error.

## II

### A

### First Assignment of Error

The trial court erred as a matter of law and to the prejudice of the appellant by applying the wrong standard of review in an O.R.C. § 2506 appeal of an annexation.

{¶ 6} In his first assignment of error, appellant argues that the common pleas court failed to apply the proper standard of review when it reviewed the board's decision. Specifically, appellant argues that the common pleas court erred because it applied the appellate court standard of review, not the common pleas court standard of review. We disagree.

{¶ 7} When reviewing a decision pursuant to R.C. 2506.04, the common pleas court

considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.

*Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147, 735 N.E.2d 433. The common pleas court may "affirm, reverse, vacate, or modify the order, * * * or remand the cause to the officer or body appealed from with instructions to enter an order, * * * consistent with the findings or opinion of the court." R.C. 2506.04.

{¶ 8} The standard of review to be applied by an appellate court in an R.C. 2506.04 appeal is *"more limited* in scope." (Emphasis sic.) *Henley,* 90 Ohio St.3d at 147, 735 N.E.2d 433, quoting *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848. In *Henley,* the Ohio Supreme Court explained its analysis of an appellate court's review procedure, stating:

"[R.C. 2506.04] grants a more limited power to the court of appeals[,] * * * which does not include the same extensive power to weigh 'the preponderance of substantial, reliable, and probative evidence,' as is granted to the common pleas court." [*Kisil,* 12 Ohio St.3d] at fn. 4 "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so."

*Henley,* 90 Ohio St.3d at 147, 735 N.E.2d 433, quoting *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264.

{¶ 9} Appellant correctly points out that while the hearing before the trial court "pursuant to R.C. 2506.01 is not *de novo,* it often in fact resembles a *de novo* proceeding." (Emphasis sic.) *Kisil,* 12 Ohio St.3d at 34, 12 OBR 26, 465 N.E.2d 848. However, appellant misapplies this proposition of law to the trial judge's statement at the July 12, 2005 hearing. At the hearing, the trial judge explained his role in making a determination in this appeal:

*I don't substitute my judgment for [the Board of Commissioners].* Instead, the law tells me that I have to do something else. I have to decide, having looked at everything they looked at and having heard the arguments that were made in this particular matter and having looked at the exhibits they looked at—seventy exhibits—take a look at the Township and the decision, I have to decide whether or not the Commissioners were, in their decision, unreasonable or capricious in their decision. I have to make a determination as to whether

or not their decision was based on substantial evidence, on a preponderance of the evidence, whether they acted legally or not in doing what they did. (Emphasis added.) Appellant contends that the trial court did not conduct a pseudo de novo review due to the trial judge's failure to substitute his judgment for the board of commissioners. However in *Kisil*, the Ohio Supreme Court held that "[a] court of common pleas should not substitute its judgment for that of an administrative board * * *, unless the court finds that there is not a preponderance of reliable, probative and substantial evidence to support the board's decision." *Kisil*, 12 Ohio St.3d at 34, 12 OBR 26, 465 N.E.2d 848.

{¶ 10} In this case, the trial court's January 10, 2006 judgment provides a finding that "[t]he decision of the Medina County Board of Commissioners is not unconstitutional, illegal, arbitrary, capricious, unjust or unreasonable and is properly supported with reliable, probative and substantial evidence." Accordingly, the trial judge was correct in not substituting his judgment for the board's judgment. See *Kisil*, 12 Ohio St.3d at 34, 12 OBR 26, 465 N.E.2d 848.

{¶ 11} The trial court reached its conclusions after "consideration of the pleadings, briefs, and upon careful independent review of the record of proceedings provided to the Court, including the Board of Commissioner's [sic] amended conclusions of fact." The record clearly demonstrates that the trial court reviewed the whole record and determined that there was substantial, reliable, and probative evidence supporting the board's decision. Accordingly, the trial judge's explanation that he could not substitute his judgment for that of the board of commissioners was a correct statement and application of the law. Further, the record supports that the trial judge applied the correct standard of review for the court of common pleas.

{¶ 12} Appellant's first assignment of error is overruled.

B

### Second Assignment of Error

The trial court erred by finding that the denial of the annexation was supported by substantial[,] reliable[,] and probative evidence.

■ {¶ 13} In his second assignment of error, appellant argues that the trial court erred in upholding the board's decision to deny the annexation petition. Appellant claims that there was substantial, reliable, and probative evidence supporting the annexation. We disagree.

■ {¶ 14} As stated above, the appellate court has a limited scope of review that is directed to questions of law. *Henley*, 90 Ohio St.3d at 147, 735 N.E.2d 433, quoting *Kisil*, 12 Ohio St.3d at 34, 12 OBR 26, 465 N.E.2d 848. Based on

this limited scope of review, we must affirm the trial court's judgment unless the decision "is not supported by a preponderance of reliable, probative and substantial evidence." *Kisil*, 12 Ohio St.3d at 34, 12 OBR 26, 465 N.E.2d 848. In making this determination, this court applies an abuse-of-discretion standard. *Copley Twp. Bd. of Trustees v. Lorenzetti* (2001), 146 Ohio App.3d 450, 454, 766 N.E.2d 1022. An abuse of discretion is more than an error of law or judgment; rather, it is a finding that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Under this standard of review, an appellate court may not merely substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 15} R.C. 709.02(C)(1) requires a petition for annexation to contain "[t]he signatures of a majority of the owners of real estate in the territory proposed for annexation." Upon review of a petition of annexation, the board of commissioners must determine whether the "general good of the territory proposed to be annexed will be served," which includes a weighing of the "benefits and detriments of annexation upon the proposed annexation territory" and the surrounding area. R.C. 709.033(A)(5); *In re Appeal of Annexation of 65.48 Acres in Springfield Twp. to Village of Holland Springfield Twp.* (June 20, 1997), 6th Dist. No. L–96–301, 1997 WL 341760, at *6.

{¶ 16} However, the desires of the majority owners alone are not enough to satisfy the general-good requirement. *In re Petition for Annexation of 948.885 Acres from Lemon Twp.* (1995), 106 Ohio App.3d 289, 295, 665 N.E.2d 1165. The General Assembly has provided for the petition to be heard at a public hearing, thus allowing the board of commissioners to hear evidence in support of and against whether annexation serves the general good to the territory. Id. The general good includes both the desires of the property owners and the ability to provide adequate services to the proposed territory. See *In re Annexation of 343.2255 Acres from Symmes Twp.* (1995), 106 Ohio App.3d 512, 515, 666 N.E.2d 593; *In re Appeal of Annexation of 65.48 Acres,* 6th Dist. No. L–96–301, 1997 WL 341760, at *6; *Golonka v. Bethel Twp. Bd. of Trustees,* 2d Dist. No. 2002–CA–8, 2002-Ohio-3565, 2002 WL 1483255, at *2.

{¶ 17} The production of adequate services refers to the annexing city's ability to provide sufficient services for the health, safety, and welfare of the inhabitants of the territory seeking annexation. *In re Appeal of Annexation of 65.48 Acres,* 6th Dist. No. L–96–301, 1997 WL 341760, at *7. If there is a showing that the city is unable to provide a necessary service that it must provide, then the board of commissioners is justified in denying the annexation, because the general good to the territory cannot be established. *Smith v. Granville Twp. Bd. of Trustees* (1998), 81 Ohio St.3d 608, 615, 693 N.E.2d 219. The board of

commissioners is the ultimate decisionmaker as to "whether a specific service to the area constitutes an acceptable benefit or detriment." *In re Annexation of 343.2255 Acres from Symmes Twp.*, 106 Ohio App.3d at 517, 666 N.E.2d 593. See *In re Petition for Annexation of 948.885 Acres*, 106 Ohio App.3d at 296, 665 N.E.2d 1165.

{¶ 18} The record before the trial court and this court included the board's amended conclusions of fact, the petition for annexation, minutes from the board's meetings, transcripts of the board's meetings, board resolutions, memoranda from the Medina County Sanitary Engineering Department, letters from Mark Majewski of Northstar Planning and Design, Daniel Johnson of Burgess & Niple, and William Gould of W.W. Geosciences, and the results of a survey of Wadsworth Township residents regarding growth. While we recognize that we do not weigh the evidence as the common pleas court does, we must ensure that evidence existed and determine whether the common pleas court abused its discretion.

{¶ 19} The board found that there was "no evidence of a benefit to the majority of the territory itself * * *, nor the surrounding area," and, thus, appellant failed in his burden of proof that the proposed annexation would serve the general good of the territory. None of the 24 landowners who signed the petition provided any testimony or evidence in support of the general good of the territory. While their signatures on the petition show their consent to annexation, this fact does not equate to evidence that the annexation is beneficial.

{¶ 20} Further, appellant argues that the remaining property owners who did not sign the petition are consenters, not objectors, to the petition. Contrary to appellant's position, "the Ohio legislature has not seen fit to go for an expression of consent or lack of same" for those who do not sign the petition. *Trustees of Bazetta Twp. v. Warren* (1975), 46 Ohio App.2d 147, 151, 75 O.O.2d 121, 349 N.E.2d 318. See, also, *In re Annexation of 369.781 Acres of Land in Tuscarawas Twp., Stark Cty., Ohio v. Tuscarawas Twp. Bd. of Trustees* (Aug. 5, 1991), 5th Dist. No. CA–8446, 1991 WL 160822, at *8, fn. 18. There was no testimony or evidence from 17 of the 19 persons who did not sign the petition. Accordingly, the board was unable to determine the position of those who did not sign the petition. The lack of evidence regarding the desires of the nonsigning persons also hampers a showing of the general good of the territory.

{¶ 21} Additionally, appellant argues that the board applied the wrong burden of proof in determining the general good of the territory. Appellant claims that the board centered its decision on the property owners who owned the majority of the land, instead of a majority of the property owners. As discussed above, R.C. 709.02(C)(1) requires the petition to be signed by the majority of property owners. In this case, the petition was signed by 24 of the 43 owners.

Thus, appellant met the R.C. 709.02(C)(1) requirement that the majority of the property owners must sign the petition, and that fact was acknowledged by the board.

{¶ 22} In its amended conclusions of fact, the board also addressed the amount of land held by the majority property owners in relation to the amount of land held by those who did not sign the petition. While the board pointed out the disproportionate amount of land held by each group, the board also recognized that it must look at the entire area being sought for annexation and not just one specific area in making its determination. See *In re Petition for Annexation of 948.885 Acres,* 106 Ohio App.3d at 296, 665 N.E.2d 1165 ("[T]he Board and the lower court had to consider whether annexation would serve the general good of the *entire territory,* not simply that portion of the territory containing the most property owners"). (Emphasis added.) In its amended conclusion of facts, the board correctly applied the law when it held that it "can not [sic] presume that the general good is served and the annexation is beneficial to the entire area simply because the owners of thirty-two percent (32%) of the property feel that it is beneficial to their land."

{¶ 23} Appellant's main argument in support of a benefit to the general good of the territory is the ability of the territory to receive city water. Appellant asserts that the water tables in the territory are low and that the property owners will have to drill deeper wells to access water. Appellant put forth testimony from Mr. Mills, one of the property owners, regarding the low water tables and the possibility of digging a deeper well. However, Mr. Mills's testimony is not determinative, because it was merely conjecture and not supported by any facts. See *Lorenzetti,* 146 Ohio App.3d at 455, 766 N.E.2d 1022, quoting *Libis v. Akron Bd. of Zoning Appeals* (1972), 33 Ohio App.2d 94, 100, 62 O.O.2d 146, 292 N.E.2d 642 (In an administrative appeal, "legal matters are determined by facts, not by belief or desires").

{¶ 24} Appellant also presented testimony from Mr. Easton, the Director of Public Services, regarding the city's ability to provide water to the proposed territory. The city had Burgess & Niple evaluate the city's current water system and the city's ability to provide water in the future to its current residents and potential new territories. The Burgess & Niple report found that the city was close to capacity in its ability to provide water to its current residents. The city was advised to make plans for future water system improvements and to carefully evaluate when the water system improvements would be available for future developments and territories.

{¶ 25} Mr. Easton went on to testify that the city feels it will be able to provide water to the proposed territory within three years of annexation. The city is looking into its options for developing new water sources, including a well field in

Chippewa Township. Despite these plans, the Burgess & Niple report reiterated the city's need to proceed with caution.

{¶ 26} Mr. Gould of W.W. Geosciences evaluated the city's plans to utilize the Chippewa Township well field. Mr. Gould found the city's plan flawed, because it relied upon a 22–day pumping test in March 2002. Based on the results of the pumping test, the city is under the assumption that the Chippewa Township well field will provide the city with 2.9 million gallons of water a day. However, Mr. Gould pointed out that the pumping test was of too short a duration to yield accurate results. Further, the well field does not have aquifer recharge until after a rain event, which then only partially resupplies the aquifer with water. In addition to the sustainability question, Mr. Gould found that there was no evidence that the water from the well field would be safe for consumption and use.

{¶ 27} Additionally, Mr. Easton advised that the plan to use the Chippewa Township well field was still in the development phase. The city still needs to obtain easements for rights of way for the well-water transmission line. At the time of the annexation hearing, the city had obtained nine of the 30 required easements. Mr. Easton conceded that the city was receiving opposition from property owners in Wayne County regarding the city's use of the Chippewa Township well field. The opposition was directed at the new transmission line and the new well field. Additionally, Mr. Easton admitted that the city does not have approval from Chippewa Township or the Environmental Protection Agency to do any construction with regard to the water system. Further, some of the surrounding municipalities also oppose the city's plan to tap into the Chippewa Township well field. Accordingly, the city would not proceed any further with this plan until the annexation was approved and a zoning classification for the territory established.

{¶ 28} Based on the above evidence, we find that there are serious concerns regarding the city's ability to provide water to the proposed territory. While it may be a benefit for the proposed territory to receive city water, there is no guarantee that the city can provide this necessary service. Recognizing that the weight of the evidence and the credibility of the witnesses are for the trier of fact, this court concludes that neither the board nor the trial court abused its discretion in relying on Mr. Gould's and Mr. Easton's testimony. Based upon this showing of doubt as to the city's ability to provide water, the board was justified in denying the annexation. See *Smith,* 81 Ohio St.3d at 615, 693 N.E.2d 219; *Golonka,* 2002-Ohio-3565, 2002 WL 1483255, at *3.

{¶ 29} It is clear to this court that the trial court carefully examined the entire record in reviewing and weighing the evidence. After thoroughly reviewing the

record, we find that the common pleas court did not abuse its discretion in affirming the board's decision to deny appellant's annexation petition.

{¶ 30} Appellant's second assignment of error is overruled.

## C

### Third Assignment of Error

The trial court erred as a matter of law and to the prejudice of the appellant by failing to find a conflict of interest tainting the fundamental fairness of the proceedings where the Medina County Prosecutor[']s office represented both Wadsworth Township, a party seeking to stop the annexation, and the board of county commissioners, the decision maker on the annexation in the same annexation proceeding.

{¶ 31} Appellant's third assignment of error alleges that it was a conflict of interest for the Medina County Prosecutor's Office to represent both the township and the board. Appellant argues that the annexation hearing is a quasijudicial hearing and that it was a conflict for the prosecutor's office to represent the township, who was advocating its position to the board, and to advise the board, who was deciding the annexation issue. It is appellant's position that this overlap in representation tainted the annexation proceeding and "violates notions of impartiality and fairness." We disagree.

{¶ 32} The prerequisite to disqualifying an attorney due to a conflict of interest is the existence of a prior or current attorney-client relationship between the party moving for disqualification and the attorney being sought for disqualification. *Morgan v. N. Coast Cable Co.* (1992), 63 Ohio St.3d 156, 159, 586 N.E.2d 88. "[S]trangers to the attorney-client relationship[ ] lack standing to assert that a conflict of interest exists." Id. at 161, 586 N.E.2d 88.

{¶ 33} The record is void of any evidence that appellant or any of the petitioners, currently or in the past, have been engaged in an attorney-client relationship with any of the three Medina county prosecutors involved in this matter. Accordingly, appellant and the petitioners lack standing to bring a conflict-of-interest claim.

{¶ 34} Appellant's third assignment of error is overruled.

## III

{¶ 35} Appellant's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

SLABY, P.J., concurs.

CARR, J., dissents.

CARR, Judge, dissenting.

{¶ 36} I would reverse the judgment and remand the cause to the board because of its findings relating to the property owners who own the majority of the land sought to be annexed. I agree with appellant that by the board's findings, it appears that the board unreasonably required the petitioners to show that these property owners were in agreement with the proposed annexation despite the fact that these property owners did not appear for the hearing and a majority of the landowners were in favor of the annexation. I would remand the cause to the board for further review under the proper statutory considerations.