OPINION *Page 2 
{¶ 1} Appellant, Plain Township Board of Trustees, appeals from the judgment of the Stark County Court of Common Pleas which affirmed the decision of the Stark County Board of Commissioners to grant a petition for annexation filed by the City of Canton.
 STATEMENT OF FACTS AND CASE {¶ 2} On May 23, 2006, appellee, the City of Canton, by and through its agent, Samuel Sliman, filed a petition for the annexation of 51.228 acres of land ("territory") from Plain Township to the City of Canton. The petition for annexation was sought by the property owners and is commonly referred to as a regular type annexation. The property was wholly owned by Diano Realty Corp., and the petition for annexation was properly signed by the corporate officers, Anthony Diano and Darlene Guynup.
 {¶ 3} On July 26, 2006, the Stark County Board of Commissioners held a public hearing in accordance with R.C. 709.02. At the hearing Samuel Sliman appeared as an agent of the petitioner, an agent of the City of Canton and a witness in favor of the petition for annexation.
 {¶ 4} Sliman, after having been duly sworn, stated in his opening statement to the board of commissioners that the annexation was pretty "clear cut". T.5-6. He stated that the 51.288 acre territory is adjacent to the City of Canton from the west, south, north and east. He further stated that the territory is essentially vacant that there are "no houses, no residents, [and] no businesses on the property" T.6. He stated that the territory used to be a quarry and that recently the owners have been using the property to dump non-toxic materials such as rocks and cement. T.6. Sliman stated that the City *Page 3 
of Canton had been negotiating to purchase a portion of the property that lies east of the City of Canton.[1] He stated that it is the city's intention to clean up this area "a little bit" and to expand the city's service center which is utilized by the park department, engineering department and motor vehicle department. T.6.
 {¶ 5} During his testimony Sliman stated, "I did not call on any people here or any people here on this annexation. I simply wanted to abide by the wishes of the property owner. Because he wanted his property in the City of Canton so that he could get the services the City provides. * * * Nor did I try to cultivate a larger annexation than what is immediately requested by the property owner." T. 19-20.
 {¶ 6} Sliman testified that the annexation was not unduly large. He stated that Canton is 15,000 acres so "51 acres brought into the city limits is not a great deal of land." T.20.
 {¶ 7} Sliman testified that because the land was vacant it did not have any roadways, therefore, safety services access to surrounding areas would remain the same. Sliman stated, "in order to respond to these people of Plain [Township] * * * they [safety services] have to come through Canton anyway." T.21. The evidence also established that the city had passed resolution 87/2006 indicating that in the event of an annexation, Canton City services would be provided to the territory.
 {¶ 8} Plain Township Fire Chief, John Sabo, concurred with Sliman and testified that an annexation of the territory would not in any way prevent him from providing services to the area. T.33. He expressed concerns that the confusion would come from the citizens' perspective regarding which entity was to provide emergency services to a *Page 4 
particular territory and the surrounding community, i.e. Canton City or Plain Township. T.33. He suggested it could create a confusion regarding safety services.[2]
 {¶ 9} Further evidence was presented that the total taxable value of the territory is fifty-thousand, two hundred and thirty dollars ($50,230.00). The evidence established that this taxable value would mean a nominal, five hundred and forty one dollars and forty-five cent annual real estate tax loss to Plain Township.
 {¶ 10} On August 17, 2006, the Stark County Board of Commissioners approved the annexation. In its approval the Stark County Board of Commissioners found in pertinent part as follows:
 {¶ 11} "4) The territory proposed to be annexed is not unreasonably large. [and]
 {¶ 12} "5) On Balance the general good of the territory proposed to be annexed will be served, and the benefit to the territory proposed to be annexed and the surrounding area will outweigh the detriments to the territory proposed to be annexed and the surrounding area, if the annexation petition is granted. * * *"
 {¶ 13} On September 11, 2006, appellant filed an administrative appeal in the Stark County Court of Common Pleas.
 {¶ 14} On February 7, 2007, the Stark County Court of Common Pleas issued a judgment entry affirming the decision of the Stark County Commissioners. In the decision the trial court held that the decision of the Board of Commissioners "was not unconstitutional, illegal, arbitrary, capricious, or unsupported by a preponderance of substantial, reliable, and probative evidence on the whole record". *Page 5 
 {¶ 15} It is from this judgment entry that the appellants now seek to appeal, setting forth the following assignments of error:
 {¶ 16} "I. THE PROPERTY PROPOSED FOR ANNEXATION IS UNREASONABLY LARGE.
 {¶ 17} "II. THE BOARD OF COUNTY COMMISSIONERS HAD NO EVIDENCE BEFORE THEM TO FIND THAT THE GENERAL GOOD OF THE TERRITORY PROPOSED FOR ANNEXATION WOULD BE SERVED."
 {¶ 18} Initially we note that this court does not have the same extensive power to weigh the "preponderance of substantial, reliable, and probative evidence, as is granted to the common pleas court.Kisil v. Sandusky (1984), 12 Ohio St. 3d 30, 34, 465 N.E.2d 848. Based on this limited scope of review, this Court must affirm the trial court's judgment unless the decision "is not supported by a preponderance of reliable, probative and substantial evidence. Kisil v.Sandusky, 12 Ohio St.3d at 34, 465 N.E.2d 848. In making this determination this Court applies an abuse of discretion standard.Copley Twp. Bd. Of Trustees v. Lorenzetti (2001), 146 Ohio App.3d 450,2001-Ohio-1662, 766 N.E.2d 1022, See also, Witschey v. Medina County Bd.of Comm., 169 Ohio App. 3d 214, 2006-Ohio-5135, 862 N.E.2d 535. An abuse of discretion is more than an error of law or judgment; rather, it is a finding that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140. Under this standard of review, an appellate court may not merely substitute its judgment for the trial court. Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. *Page 6 
 I {¶ 19} In the first assignment of error appellant argues that the trial court abused its discretion in affirming the decision of the Stark County Board of Commissioners and finding that the territory sought to be annexed was not unreasonably large. Appellant argues in support that the proposed annexation involves a substantial amount of land. Appellant also argues that the annexation would segregate a portion of Plain Township thereby creating a community in Plain Township that essentially would be an island and could create confusion of emergency safety services to the annexed property and surrounding area. We disagree.
 {¶ 20} Whether or not a territory sought to be annexed is unreasonably large is one of the factors a board of commissioners is required to consider pursuant to R.C. 709.033 (A)-(E) prior to granting a petition for annexation. The factors set forth in R.C. 709.033(A) are as follows:
 {¶ 21} "(1) The petition meets all the requirements set forth in, and was filed in the manner provided in, section 709.02 of the Revised Code.
 {¶ 22} "(2) The persons who signed the petition are owners of real estate located in the territory proposed to be annexed in the petition, and, as of the time the petition was filed with the board of county commissioners, the number of valid signatures on the petition constituted a majority of the owners of real estate in that territory.
 {¶ 23} "(3) The municipal corporation to which the territory is proposed to be annexed has complied with division (D) of section 709.03
of the Revised Code.
 {¶ 24} "(4) The territory proposed to be annexed is not unreasonably large. *Page 7 
 {¶ 25} "(5) On balance, the general good of the territory proposed to be annexed will be served, and the benefits to the territory proposed to be annexed and the surrounding area will outweigh the detriments to the territory proposed to be annexed and the surrounding area, if the annexation petition is granted. As used in division (A)(5) of this section, `surrounding area' means the territory within the unincorporated area of any township located one-half mile or less from any of the territory proposed to be annexed.
 {¶ 26} "(6) No street or highway will be divided or segmented by the boundary line between a township and the municipal corporation as to create a road maintenance problem, or, if a street or highway will be so divided or segmented, the municipal corporation has agreed, as a condition of the annexation, that it will assume the maintenance of that street or highway. For the purposes of this division, `street' or `highway' has the same meaning as in section 4511.01 of the Revised Code."
 {¶ 27} In In re Annexation of 1,544.61 Acres (1984),14 Ohio App.3d 231, 232, 470 N.E.2d 486, 489, the Ninth District stated that "Any issue of `reasonableness' necessitates a comparison, a weighing of pros and cons. Therefore, the determination of [what is] unreasonably large requires a three-pronged analysis of the following:
 {¶ 28} "(1) the geographic character, shape and size (acreage) of the territory to be annexed in relation to the territory to which it will be annexed (the city), and in relation to the territory remaining after the annexation is completed (the remaining Township area); * * * *Page 8 
 {¶ 29} "(2) the ability of the annexing city to provide the necessary municipal services to the added territory. (Geographic as well as financial `largeness' may be considered. * * *)[and]
 {¶ 30} "(3) the effect on remaining township territory if annexation is permitted. If the territory sought to be annexed is so great a portion of the township's tax base that the annexation would render the remaining township incapable of supporting itself, then the Board might reasonably conclude the proposed annexation is unreasonably large, although such annexation would benefit the territory sought to be annexed." Herrick v. Bd. of County Commrs. (Jan. 23, 1980), Summit App. No. 9425, unreported, at 6. See also, Smith v. Orange Township Bd. OfTrustees, Delaware App. No. 96CA-E-08-043, (Feb. 14, 2997), unreported.
 {¶ 31} Furthermore, an annexation may be found to be unreasonable or unlawful if it is not adjacent to, or contiguous with the annexing municipality. "While it is generally agreed that some touching of the municipality and territory to be annexed is required, the law is unsettled as to what degree of touching is needed to fulfill the contiguity requirement. Middletown v. McGee (1988), 39 Ohio St.3d 284,287, 530 N.E.2d 902, 905, citing, Annotation, What Land is Contiguous or Adjacent to Municipality as to be Subject to Annexation (1973), 49 A.L.R.3d 589, 598, Section 3(a). Generally, Ohio courts have frowned upon, "strip, shoestring, subterfuge, corridor, and gerrymander annexations". Watson v. Doolittle (1967), 10 Ohio App. 2d 143, 148-149,226 N.E.2d 771. 775.
 {¶ 32} Appellant argues that the annexation involves a substantial amount of land, creates an island and would cause confusion of emergency safety services. *Page 9 
Counsel for Plain Township explained in the opening comments that the annexation creates an "island" not in the context that the property to be annexed was not adjacent to the City of Canton, but rather that the annexation segregates a portion of the Plain Township community and would cause a confusion of services between Plain Township and Canton City. T.27.
 {¶ 33} However, we find that the evidence established that the annexation was not unreasonably large in that the area itself was not substantial, and it would not significantly change the geographic character, shape or size of either the City of Canton or Plain Township. During the hearing, Sliman testified that the annexation was not unduly large. He stated that Canton is 15,000 acres so "51 acres brought into the city limits is not a great deal of land." T.20. The evidence also established that Plain Township would only experience a $541.45 annual loss of real estate tax revenue.
 {¶ 34} Furthermore, we find that there was no evidence to suggest that the annexation would create an "island". Sliman testified that the territory to be annexed was adjacent to the City of Canton on the North, South, East and West.[3] Therefore, the territory to be annexed will not create an island of City of Canton property in the middle of Plain Township.
 {¶ 35} The surrounding residents and counsel for Plain Township argued that the annexation would effectively isolate or segregate a portion of the Plain Township community. But, the evidence seemed to indicate that a portion of Plain Township was already segregated from the rest of Plain Township by the Diano property as it currently exists because there are no roads across the Diano property. In fact the evidence *Page 10 
established that access to the Plain Township area would remain the same through the use of Canton City roads and that there would be little or no confusion of emergency services. T.21. Furthermore, Chief Sabo of the Plain Township Fire Department admitted that safety services would remain the same for the surrounding Plain Township community in the event of an annexation. T.38-39.
 {¶ 36} For these reasons we find that the trial court's determination that the territory sought to be annexed was not unreasonably large is supported by a preponderance of reliable, probative and substantial evidence. Accordingly, we hereby overrule appellant's first assignment of error.
 II {¶ 37} In the second assignment of error, appellant argues that the trial court abused its discretion in finding that the general good of the territory would be served if the annexation was granted. Specifically, appellant argues that the evidence presented failed to satisfy the "general good" requirement of R.C. 709.033(A)(5) as it pertains to the surrounding area. We disagree.
 {¶ 38} As previously stated, R.C. 709.033(A)(5) states as follows:
 {¶ 39} "(5) On balance, the general good of the territory proposed to be annexed will be served, and the benefits to the territory proposed to be annexed and the surrounding area will outweigh the detriments to the territory proposed to be annexed and the surrounding area, if the annexation petition is granted. As used in division (A)(5) of this section, "surrounding area" means the territory within the unincorporated area of any township located one-half mile or less from any of the territory proposed to be annexed." *Page 11 
 {¶ 40} We note that in enacting statutes governing annexation, one of the intentions of the legislature was "to give an owner of property freedom of choice as to the governmental subdivisions in which he desires his property to be located. "Toledo Trust Co. v. Bd. OfCommrs. (1977), 62 Ohio App. 2d 121, 124, 404 N.E.2d 764, 766 citing,In re Lariccia (1973), 40 Ohio App. 2d 250, 318 N.E.2d 871. In this case the property owners petitioned the Stark County Board of Commissioners for the annexation.
 {¶ 41} However, the desires of the majority of owners alone, is not enough to satisfy the general good requirement. In re Witchey v. MedinaCty. Bd. Of Commrs., supra. The general good requirement includes both the desires of the property owner and the receipt of some benefit to annexed property and the surrounding area. Carlisle Twp. Bd. Of Trusteesv. Elyria, Lorraine App. No. 07CA009142, 2008-Ohio-1125; In re Witcheyv. Medina Cty. Bd. Of Commrs., supra; see also, 709.033(A)(5). Additionally, the existence of some benefit must be supported by facts not simply by speculation, beliefs or desires. See In re Witchey v.Medina Cty. Bd. Of Commrs., supra; Copley Township Bd. Of Trustees v.Lorensetti, supra.; Li bis v. Akron Bd. Of Zoning Appeals (1972)33 Ohio App. 2d 94, 292 N.E. 2d 642.
 {¶ 42} In the case sub judice the evidence established that the majority of the property owners sought the annexation, the annexed property would benefit by receiving city services, and the surrounding area would benefit from a general clean up, of at least a portion of the 51 acres, of debris, waste and junk which had accumulated over a period of years. *Page 12 
 {¶ 43} Samuel Sliman stated that he was acting solely upon the request of the property owners and their desire to receive Canton city water and sewer services.T.19. Sliman stated that an annexation to the city was the only way the property would receive city services.[4] The evidence established that Canton City had passed resolution 87/2006 indicating that in the event of an annexation, Canton City services would be provided to the annexed territory.
 {¶ 44} During opening comments and testimony on the merits of the annexation, Samuel Sliman stated that the property sought to be annexed by the owners used to be a quarry and had more recently been used for the disposal of non-toxic materials such as rocks and cement. T.6. Several witnesses attending the hearing who were in opposition to the annexation, testified that the property was cluttered with car tires, waste and other junk and nothing had been done in years to clean up the mess.T.49, 52, 56. Sliman stated that the City of Canton was negotiating with the property owners to purchase a portion of the 51 acres that was adjacent to the city on the east. Sliman stated that after the portion of property had been purchased, the city would be using the land to extend the city service center which would continue to be utilized by Canton city's park department, engineering department and motor vehicle department. Sliman also stated that once the property was purchased the city would clean up the tires, waste and debris that had accumulated on the purchased portion. T.6 and 21.
 {¶ 45} At the hearing, the surrounding property owners and counsel for Plain Township also expressed concerns that the annexation would be detrimental because *Page 13 
the area would become a housing development and would essentially cut off Plain Township. However, there was no evidence presented regarding a housing development, and as stated previously, a portion of Plain Township is already segregated from Plain Township by the Diano property which has no roads through it.
 {¶ 46} For these reasons we find that the trial court's determination that the annexation supported the general good is supported by a preponderance of reliable, probative and substantial evidence.
 {¶ 47} Accordingly, appellant's second assignment of error is not well taken and is hereby overruled.
 {¶ 48} The Judgment of the Stark County Court of Common Pleas is hereby affirmed.
Edwards, J. Gwin, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] No further information was presented regarding the attempted purchase.
[2] "When you start to take land and you checkerboard it or make peninsulas out of it or you take roads and you go for 100 feet and take half of it and then you jog back over, all that does is creates confusion." Chief Sabo T.34. "In many areas, the reality is that Plain Township, Canton and North Canton are indistinguishable from each other * * * There is no apparent sense of leaving the areas in the City and entering the Township as it historically used to be." Chief Sabo T.35-36.
[3] The area is described as being just south of 30th
street, West of Harmont, East of Harrisburg, and North of 25th street. T.13.
[4] Sliman testified that the area would remain devoid of water and sewer services unless annexed by the City of Canton. Sliman stated, "[a]ny land that is contiguous on or about our borders, if it's close to be annexed — if it's an annexable area, we intend to annex before we service it with water or in cooperative agreement with the Township."T.8. *Page 1