DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, South Park, Ltd., appeals from the judgment of the Lorain County Court of Common Pleas which affirmed Appellee's denial of an application for approval of a cluster subdivision. This Court reverses.
 I. {¶ 2} Appellant sought approval from Appellee, City Council of Avon, for the development of a cluster subdivision. Appellant appeared before the Avon Lake Planning Commission on numerous occasions and modified his developmental proposal to obtain the approval of the Planning Commission. When the proposal was submitted to Appellee, six of the seven council members voted to deny approval of the subdivision. In support of its denial, one Appellee member noted that the development did not meet the green space requirements of the applicable city zoning ordinance. The remaining members relied upon the general aspirations of the zoning ordinances set forth in the preamble to the zoning code. The record reflects that the green space requirement had previously been reviewed by Michael Bramhall, a consulting engineer for the city. Bramhall questioned and subsequently approved the application when Appellant modified its plat.
 {¶ 3} Appellant, thereafter, appealed the decision of Appellee to the Lorain County Court of Common Pleas. In support of its appeal, Appellant supplemented the trial court record with numerous exhibits, including minutes from Council meetings and correspondence between the parties. Ultimately, the trial court affirmed Appellee's denial of Appellant's application, without articulating supporting rationale based upon the record before it. Appellant timely appealed the trial court's decision. This Court reversed, finding that the trial court had utilized an improper standard of review. See South Park Ltd. v. Avon, 9th Dist. No. 04CA008558, 2005-Ohio-2153. On remand, the trial court again affirmed Appellee's denial of the permit without supporting rationale. Appellant again timely appealed, raising one assignment of error for our review.
 II. ASSIGNMENT OF ERROR
"ALTHOUGH UPON REMAND FROM THIS COURT THE TRIAL COURT REWORDED ITS JOURNAL ENTRY, HAVING DONE SO WITHOUT ANY HEARING OR OTHER COMMUNICATION WITH THE PARTIES, NOR OFFERING ANY ANALYSIS TO PROVIDE INSIGHT INTO ITS AMENDED DECISION, THE TRIAL COURT AGAIN ERRED IN AFFIRMING THE DECISION OF THE COUNCIL OF THE CITY OF AVON, WHEREBY THE SUBDIVIDER AGREEMENT AND FINAL SUBDIVISION PLAT FOR THE 7.5-ACRE KENWYN VILLAGE ESTATES SUBDIVISION WERE DENIED, DESPITE THEIR FULL COMPLIANCE WITH ALL APPLICABLE CITY ORDINANCES. * * *"
 {¶ 4} In its sole assignment of error, Appellant argues that reversal is appropriate on multiple grounds. Specifically, Appellant alleges that Appellee's decision was not supported by a preponderance of substantial, reliable, and probative evidence. We agree.
 {¶ 5} Appellant appealed the decision of Appellee to the court of common pleas pursuant to R.C. 2506.01. When reviewing a decision pursuant to R.C. 2506.04, the common pleas court:
"considers the `whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." Henley v.Youngstown Bd. of Zoning Appeals (2000), 90 Ohio St.3d 142, 147.
Pursuant to R.C. 2506.04, the common pleas court may, consistent with its findings upon consideration of the whole record, "affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court."
 {¶ 6} The standard of review used by this Court in an R.C.2506.04 appeal is "more limited in scope." Kisil v. Sandusky
(1984), 12 Ohio St.3d 30, 34. "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Id. at fn. 4. "The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." Lorain City School Dist. Bd. of Edn. v. State Emp.Relations Bd. (1988), 40 Ohio St.3d 257, 261. Nevertheless, "[i]t is incumbent on the trial court to examine the evidence." Id.
 {¶ 7} Therefore, when reviewing the judgment of a common pleas court which determined an appeal from an administrative agency, "[w]e must affirm the [trial court] unless that court's decision `is not supported by a preponderance of reliable, probative and substantial evidence.'" White v. Cty. of Summit,
9th Dist. No. 22398, 2005-Ohio-5192, at ¶ 13, quoting Russel v.Akron Dept. of Public Health, Hous. Appeals Dept. (2001),142 Ohio App.3d 430, 432. In making such a determination, this Court applies an abuse of discretion standard. White at ¶ 13, citingCopley Twp. Bd. of Trustees v. Lorenzetti (2001),146 Ohio App.3d 450, 454. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 8} In support of affirmance, Appellee urges that it acted within its authority and that Appellant failed to comply with the applicable zoning regulations. Upon review of the record, we disagree.
 {¶ 9} Upon denying Appellant's motion, Councilman Julius noted that he did not feel that the project was in the best interest of the City. Councilman Gentz expressed his rationale for voting to deny the permit as follows:
"[T]here's nothing in here that tells me this is in the best interests of the City, there's nothing that tells me that this development could not have been placed before the City as traditional lots, there's nothing in here that would present us with any special circumstances to allow a cluster development, and that's the reason for my negative vote."
Councilwoman Easterday supported her negative vote by noting that she felt that the developer had not worked with the City enough and that the development could be significantly better. Councilwoman Hartwig voted against the permit based upon the fact that it proposed a cluster development and that she believed it was near high tension wires. Councilman Wearsch relied upon the preamble to the zoning ordinance and his belief that the property did not meet the green space requirements of the code to justify his negative vote. Councilman Kilroy gave no reason for his negative vote. Finally, Councilman Nickum voted in favor of granting the permit.
 {¶ 10} As demonstrated above, of the six members who voted against granting the permit, nearly all relied in some part upon the preamble to the City's zoning code. Avon Planning and Zoning Code ("A.P.Z.C.") 1262.01 provides as follows:
"PURPOSE
"The R-1 and R-2 Residential Districts and their regulations are established in order to achieve, among others, the following purposes:
"(a) To implement the Master Plan policies by encouraging the development of residential areas with a range of housing types which encourage social and economic amenities necessary for well-balanced residential neighborhoods.
"(b) To regulate the density and distribution of population in accordance with the Master Plan to avoid congestion and provide adequate public services.
"(c) To protect the desirable characteristics and promote the stability of existing residential development and to protect adjacent properties from unreasonable obstruction of light and air.
"(d) To provide for proper location of institutions and other community facilities so as to increase the general convenience, safety and amenities within the community."
In relying upon the above, Council members urged that these provisions were prerequisites to obtaining a zoning permit. We disagree.
 {¶ 11} By its plain language, Section 1262.01 does not create any zoning requirements. Rather, it details the overriding purposes which are to be achieved by the zoning regulations which follow. To permit the Council to rely upon the general aspirations set forth above would effectively abrogate the specific provisions which follow and grant the Council the ultimate authority to determine City planning, with no guidelines to inform their decisions.[1] Further, enforcing such broad concepts, like whether a proposed development is in the best interest of the City, runs afoul of this Court's precedent. InGillespie v. Stow (1989), 65 Ohio App.3d 601, this Court held that Council could not deny a permit simply because a proposed permitted use "is no longer desired for the proposed location. Such a basis is outside the administrative authority which the Code vests in council." Id. at 607. Finally, "because adherence to the [provisions in the preamble] is not required in the code, the Council could not legitimately reject [Appellant's] application on this basis." Gross Builders v. Tallmadge, 9th Dist. No. 22484, 2005-Ohio-4268, at ¶ 46.
 {¶ 12} Simply stated, "[t]he city should not consider general aspirations in deciding whether a specific use contravened legislatively adopted standards for a generally permitted use. * * * Unless the city rezones that area, it must authorize uses consistent with its existing zoning code." Hydraulic Press BrickCo. v. Independence (1984), 16 Ohio App.3d 204, 208. As Avon's zoning code specifically permits cluster developments, the Council's reliance upon the general aspirations set forth in the preamble to the zoning code was erroneous as a matter of law. Id. at 208-09.
 {¶ 13} Next, we consider whether Councilman Wearsch's rationale for denying the permit is supported by the record. In his vote, Councilman Wearsch concluded the plan submitted by Appellant did not meet the green space requirements of the zoning. Specifically, Councilman Wearsch noted that two blocks of open space were used to meet the 30% requirement of A.P.Z.C. 1266.04, but only one of the blocks met the 100-foot minimum width requirement of A.P.Z.C. 1266.06. We find that Councilman Wearsch's position is unsupported by the record. A.P.Z.C. 1266.06 provides as follows:
"The minimum common open space required in Section 1266.04 [30%] shall be provided as follows:
"(a) The required common open space shall be located and designed to:
"(1) Be sufficiently aggregated to create large areas of planned open space.
"(2) Conserve significant natural features to the extent practicable.
"(3) Be easily accessible to residents of the cluster development.
"(4) Generally, be not less than 100 feet in width at any point, except for short segments which provide visual and pedestrian connections between larger open space areas.
"(5) Be interconnected with open space areas on abutting parcels, wherever possible, by open space corridors."
Councilman Wearsch's conclusion that Appellant did not comply with subsection 4 above is unsupported by the record and contradicted by Mr. Wearsch's own statements earlier in the zoning process.
 {¶ 14} The record reflects that the Planning Commission initially expressed concern over the green space allotted in Appellant's original plans. Specifically, Bramhall Engineering 
Surveying Company, a consultant for the City, expressed concerns that the green space allotted in Appellant's original plans did not comply with the zoning requirements. Appellant, therefore, modified his plans in order to conform to the zoning requirements. Upon submitting the modified plans, Bramhall Engineering expressed no further concerns regarding the green space requirement. Mr. Wearsch begrudgingly conceded compliance when he noted, "The green space in the back [originally] didn't even reach the minimum 100-feet and he dumbed down the lots even more, as far as I was concerned, to get the 100-feetin the back."
 {¶ 15} While we are cognizant of our limited scope of review, reversal in the instant matter is compelled by the record. Despite the allowance of cluster developments by its zoning ordinances, Council members refused to approve Appellant's proposed plan of development. Council members voted against the proposal despite the fact that Appellant complied with all of the applicable zoning ordinances. Further, this Court's review of the modified plat submitted by Appellant demonstrates that the green space requirements of Avon's zoning code were met.
 {¶ 16} The record reflects that Council's vote was the result of the personal preferences of the Council members.[2] The Council's decision was unsupported by any evidence, let alone a preponderance of reliable, probative and substantial evidence. As the Council members ignored their own zoning regulations and enforced their personal views to "decide the destiny of the City," we find that their actions were arbitrary, unreasonable, and illegal. The trial court, therefore, erred in affirming the Council's decision. Accordingly, Appellant's sole assignment of error is sustained.
 III. {¶ 17} Appellant's assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this opinion.
Judgment reversed, And cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Slaby, P.J., Carr, J., Concur.
[1] We note that Councilman Gentz appears to hold this view, noting during Council's meeting, "We as a City should welcome [a lawsuit] because I think it will, hopefully establish that this City Council can decide the destiny of this City and how it will look in the future and we are not going to be bound strictly by the desires of the developers."
[2] Throughout the proceedings, Council members expressed their distaste for cluster development, urging Appellant to submit a different use for the site in question. This Court notes that the Council members' preferences were further expressed by passing a moratorium on cluster developments subsequent to Appellant's application.