DECISION AND JOURNAL ENTRY
{¶ 1} Appellants/Cross-Appellees, the Village of Peninsula, and Appellees/Cross-Appellants, Terry and Jodi Padrutt, appeal from the judgment of the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.
 I. {¶ 2} On April 2, 2007, Appellees/Cross-Appellants, Terry and Jodi Padrutt ("the Padrutts"), filed an initial application for a zoning permit and a certificate of occupancy with Appellants/Cross-Appellees, the Village of Peninsula ("Peninsula"), for their duplex located at 6122 North Locust Street in Peninsula ("the Property"). In their application, the Padrutts stated that the proposed use would be for business and that they planned to remodel the duplex as well as construct an unattached "3 bay garage". The Padrutts requested a conditional use for the addition of a third unit. The addition of this third unit is not at issue on appeal. Pursuant to Peninsula's Zoning Ordinance, the Property is located in the Mixed-Use Zoning District. The *Page 2 
Zoning Ordinance states that the Mixed-Use District is "designed to accommodate a mix of residential, commercial, and existing industrial uses that serve the needs of residents, businesses, and tourists."
 {¶ 3} The Peninsula Planning Commission approved the conditional use request, permitting the Padrutts to transform the Property from a two-unit family dwelling to a three-unit dwelling. With three units, the building falls under the following definition of a Multiple-Family Dwelling set forth in Sec. 15.02 of the Ordinance: "[a] building used or intended to be used as a dwelling by three or more families, or as an apartment house." The Padrutts do not live in the dwelling.
 {¶ 4} The Padrutts also own a water-well drilling business and certain commercial vehicles which they use in their business. While the Padrutts operate their business from another location, they proposed to construct a garage on the Property in which to house some of their commercial vehicles and equipment as well as lawn-care equipment which would be used to maintain the Property.
 {¶ 5} On June 6, 2007, the Zoning Inspector issued his decision, finding that once the Padrutts converted the property to three units, Article VII of the Zoning Ordinance required that they create five paved parking spaces on the Property and include a handicap designation. The Property currently has four parking spaces without paving or designation. The Zoning Inspector also rejected the proposed width of the sidewalks and the site plan, finding that it failed to address several landscaping requirements. The Padrutts appealed the Zoning Inspector's decision to the Board of Zoning Appeals ("the BZA") on June 28, 2007. In the alternative, the Padrutts requested variances for the sidewalk requirements. *Page 3 
 {¶ 6} On June 29, 2007, the Zoning Inspector denied the Padrutts' Application for Zoning Permit and Certificate of Occupancy concerning the garage on the basis of Sec. 11.33 of the Zoning Ordinance, which governs Garages for Commercial Vehicles. On July 12, 2007, the Padrutts appealed the Zoning Inspector's ruling on the garage to the BZA. The Padrutts also requested a variance from the landscaping requirements. On July 26, 2007, the Padrutts also requested a use variance to construct a garage for commercial vehicles and an area variance for all parking requirements.
 {¶ 7} The BZA held a hearing on the appeals on August 16, 2007. On August 27, 2007, the BZA denied all of the Padrutts' appeals. The BZA tabled all the variance requests except the variance request regarding landscaping, which they referred to the Planning Commission. Later, the BZA approved the Padrutts' proposed triplex, separately from the rest of the site plan.
 {¶ 8} On September 26, 2007, the Padrutts filed an appeal of the decision of the BZA to the Summit County Court of Common Pleas. Upon review, the trial court reversed the BZA's decision concerning the construction of a garage on the Property. The court affirmed the BZA's decision concerning the number of parking spaces required for the Property and concerning other off-street requirements. The trial court declined to address the Padrutts' arguments regarding the requirements for the pedestrian walkways, finding that "[w]hile there is reference in the briefing to disagreement concerning requirements for pedestrian walkways, the appeal does not by its terms include any such issues. This reviewing Court therefore cannot address those issues."
 {¶ 9} Both parties timely appealed the trial court's decision. We have combined a few of the parties' assignments of error to facilitate our review. *Page 4 
 II. PENINSULA'S ASSIGNMENT OF ERROR I "THE COMMON PLEAS COURT ERRED AS A MATTER OF LAW IN REVERSING THE BZA'S DECISION REGARDING THE PROPOSED GARAGE BY SUBSTITUTING ITS JUDGMENT FOR THE JUDGMENT OF THE BZA WITHOUT EXAMINING THE RELIABLE, SUBSTANTIAL AND PROBATIVE EVIDENCE AND THEREBY INTERPRETING THE ORDINANCE TO REACH AN UNREASONABLE AND ABSURD RESULT."
 PENINSULA'S ASSIGNMENT OF ERROR II "THE COMMON PLEAS COURT ERRED AS A MATTER OF LAW BY FINDING THAT A GARAGE FOR THE STORAGE OF COMMERCIAL VEHICLES IS AN `INTENDED USE . . . EXPRESSLY PERMITTED UNCONDITIONALLY BY SEC. 3.03' OF THE ZONING ORDINANCE AND THEREBY IGNORING THE USE RESTRICTION/REGULATION OF SEC. 11.33 OF THE ORDINANCE."
 {¶ 10} In its first assignment of error, Peninsula asserts that the trial court erred in reversing the BZA's decision regarding the proposed garage by substituting its judgment for the judgment of the BZA without examining the reliable, substantial and probative evidence. In its second assignment of error, Peninsula argues that the trial court erred by finding that a garage for the storage of commercial vehicles is an "intended use . . . expressly permitted unconditionally by Sec. 3.03" of the Zoning Ordinance and thereby ignoring the use restriction/regulation of Sec. 11.33 of the Zoning Ordinance." We disagree with both contentions.
 {¶ 11} R.C. Chapter 2506 governs administrative appeals of a final order, adjudication, or decision of a township board of zoning appeals.Grissinger v. LaGrange Zoning Bd. (Mar. 14, 2001), 9th Dist. No. 00CA007682, at *2. A trial court does not sit as a trier of fact in an administrative appeal; rather, when reviewing an administrative appeal, a trial court may not substitute its judgment for that of the agency unless there is a lack of a preponderance of reliable, *Page 5 
probative, and substantial evidence to support the agency's decision.Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 35; see, also, R.C. 2506.04.
 {¶ 12} The Ohio Supreme Court has held that
 "The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is more limited in scope. This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on questions of law, which does not include the same extensive power to weigh the preponderance of substantial, reliable and probative evidence, as is granted to the common pleas court. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. *** The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." (Emphasis sic.) (Internal citations and quotations omitted.) Henley v. Youngstown Bd. of Zoning Appeals (2000), 90 Ohio St.3d 142, 147.
 {¶ 13} We review administrative appeals under R.C. 2506.04 for an abuse of discretion. Witschey v. Medina Cty. Bd. of Commrs.,169 Ohio App.3d 214, 2006-Ohio-5135, at ¶ 14. An abuse of discretion is more than an error of law or judgment; rather, it is a finding that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Under this standard of review, an appellate court may not merely substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 {¶ 14} Upon review, the trial court found that the BZA erred in denying the Padrutts' permission to construct the garage. The court noted that the BZA relied only on Sec. 11.33 of the Zoning Ordinance in reaching its decision. Article 11 provides the "Standards for Specific Land Uses". Sec. 11.33 of the Zoning Ordinance governs Garages for Commercial Vehicles and provides:
 "A structure for the storage of commercial vehicles used by a permitted use in a non-residential district, shall occupy not more than the 25 percent of lot area, and shall be located outside of any required yard areas." *Page 6 
The court found no basis in Sec. 11.33 to support Peninsula's position that Sec. 11.33 is a use restriction, not an area restriction. The court noted that Sec. 11.33 "is entirely silent as to whether another structure may also be located on the same lot, much less as to whether only certain other types of structures may also be present."
 {¶ 15} Peninsula argues that the phrase "used by a permitted use" means that there must be an additional related use on the Property before a commercial vehicle storage structure can be built. Specifically, Peninsula states that "the language in 11.33 required that the vehicles being stored be ancillary or incidental to, `used by' the principal use of the property." Peninsula argues that to have a garage for the storage of commercial vehicles in the Mixed-Use district, the property would have to be used for commercial purposes, not residential as in this case. Stated differently, Peninsula asserts that the Padrutts can only construct a garage to store commercial vehicles used in the maintenance of the Property, but not attendant to their water-well drilling business. Peninsula also argues that, although a garage for a commercial vehicle is a permitted use under Sec. 3.03, which sets forth the Land Use Table, it cannot survive the use restrictions of Sec. 11.33.
 {¶ 16} In further support of its position that the garage for commercial vehicles cannot be a stand-alone use, Peninsula points to the phrase "shall occupy no more than 25 percent of the lot area, and shall be located outside of any required yard areas." Sec. 11.33. Peninsula argues that this phrase necessarily requires another use on the lot. In their brief, Peninsula highlights the central problem in interpreting and applying the Zoning Ordinance when it questions what the phrase "required yard area" means. They argue that this means that the garage is an accessory to the use on the lot because it is required to be outside the yard area of the use already on the lot. *Page 7 
 {¶ 17} In fact, Sec. 11.33 does not contain any use restrictions to prevent the garage from housing commercial vehicles. Sec. 11.33 only addresses the size and area of the structure; it does not address the use of such a structure. There is simply no language in this section to support Peninsula's interpretation. The only reasonable interpretation of this phrase is that the purpose for which the structure will be used must be a permitted one.
 {¶ 18} The record reflects that Peninsula relied solely upon Sec. 11.33 of the Zoning Ordinance in support of its denial of the Padrutts' application to construct the garage. It did not cite any other grounds below. Peninsula has failed to cite, nor can we find, a provision of the Zoning Ordinance that prohibits the construction of a commercial vehicle storage building on a lot in a Mixed-Use District on which there is also a multi-family dwelling. Rather, a review of Sec. 3.03 of the Zoning Ordinance reflects that a "Garage for Commercial Vehicles" is an expressly permitted use in a Mixed-Use District. If Peninsula wished to exclude one type of structure when another type of structure was present on a lot in a Mixed-Use District, it could have expressly done so. It did not.
 {¶ 19} Further, Peninsula asserts that the trial court erred by failing to construe the Zoning Ordinance in accordance with the context of the entire Zoning Ordinance. Peninsula urges that other sections of the Zoning Ordinance imply that the Zoning Ordinance prohibits the placement of two permitted uses on the same mixed-use property. They suggest that such a reading of the Zoning Ordinance furthers the intent of the drafters. However, Peninsula has failed to specifically cite to sections of the Zoning Ordinance to support this contention.
 {¶ 20} In 4522 Kenny Rd. v. Bd. of Zoning Adjustment,152 Ohio App.3d 526, 2003-Ohio-1891, the Tenth District Court of Appeals explained that *Page 8 
 "Because zoning regulations constitute derogation of a person's property rights, they should be given a fair and reasonable construction with due regard for the conflicting interests involved. A court should give the words in a zoning regulation the meaning commonly attributed to them unless a contrary intention appears in the regulation. The meaning of the relevant provisions of the code must be derived from the `context of the entire ordinance.' Nevertheless, where there is ambiguity, courts must strictly construe restrictions on the use of real property in favor of the property owner. This is because such restrictions are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled.
 "When an ordinance is unambiguous and conveys a clear meaning, a court must only read and follow the words of the ordinance. In such a case, there is no need to apply the rules of construction. An ordinance is ambiguous when it is subject to various interpretations. Specifically, an ambiguity exists if a reasonable person can find different meanings in the ordinance and if good arguments can be made for either of two contrary positions." (Quotations and citations omitted). Id., at ¶¶ 12-13.
 {¶ 21} Here, a garage for commercial vehicles is clearly a permitted use in a Mixed-Use District. The only ambiguity lies in the phrase "used by a permitted use". However, because we must "strictly construe restrictions on the use of real property in favor of the property owner", we find that this phrase means that the purpose for which the structure will be used is a permitted one. Id. at ¶ 12. In this matter, the garage will be used for a permitted use — the storage of commercial vehicles.
 {¶ 22} Peninsula argues that a "[f]inding that a garage for the storage and use of commercial vehicles should be erected on the same lot as a multi-family dwelling can be characterized as nothing but absurd." We disagree that allowing these two structures on the same lot in a Mixed-Use District is absurd. Furthermore, we are mindful that Peninsula drafted this Zoning Ordinance. Accordingly, it could have avoided any ambiguity by clearly setting forth a prohibition against the presence of two different permitted uses on the same mixed-use property. It did not. *Page 9 
 {¶ 23} Peninsula contends that "the lower court *** neither examined the evidence, nor gave deference to the BZA's evidentiary findings." Peninsula points out that the trial court simply stated that it "found no basis in Sec. 11.33 for the Village's position." Peninsula argues that the trial court ignored Ohio case law which requires the trial court to give deference to the BZA's resolution of "evidentiary conflicts". It argues that the court failed to review the testimony of the Zoning Inspector regarding his rationale for the decision.
 {¶ 24} While we agree with Peninsula's statement of the law, we find that the trial court did not engage in a resolution of evidentiary conflicts in this matter. Rather, the court reviewed the BZA's application of the Zoning Ordinance — an application of law. The trial court was charged with determining whether the decision of the BZA was supported by the preponderance of credible and probative evidence. R.C. 2506.04. The relevant evidence at issue concerned the lay out of the lot, the Padrutts' proposal, and the terms of the Zoning Ordinance. While the trial court was required to review the testimony presented at the hearings, as well as the other evidence presented at the administrative level, its decision with regard to the garage turned on its interpretation of the Zoning Ordinance, not its evaluation of the evidence. The trial court found that Sec. 11.33 was an area regulation, not a use regulation as Peninsula argued.
 {¶ 25} Peninsula also asserts that the trial court erred in finding that this matter is controlled by South Park, Ltd. v. Council ofAvon, 9th Dist. No. 05CA008737, 2006-Ohio-2846, at ¶ 12. It argues that, unlike the council members in South Park, the BZA was not "predisposed to denying [this] application." It points out that the BZA heard over six hours of argument and testimony and even prepared questions for the solicitor.
 {¶ 26} In South Park, we reversed the trial court's decision which upheld the city council's denial of the application for approval of a cluster subdivision. We held that the city *Page 10 
council could not rely on the general aspirations set forth in the preamble to the zoning code and the council members' personal preferences to deny the developer's application for approval of a cluster subdivision.
 {¶ 27} While we agree that this case is not controlled by SouthPark, we find that the trial court nonetheless reached the correct result in reversing the BZA's decision concerning the proposed garage. We affirm the lower court's judgment on this issue for different reasons. This Court has held that "[a]n appellate court shall affirm a trial court's judgment that is legally correct on other grounds, that is, one that achieves the right result for the wrong reason, because such an error is not prejudicial." In re Estate of Baker, 9th Dist. No. 07CA009113, 2007-Ohio-6549, at ¶ 15, citing Reynolds v. Budzik (1999),134 Ohio App.3d 844, 846, at fn. 3.
 {¶ 28} We find no abuse of discretion in the trial court's finding that the BZA's decision prohibiting the proposed garage was unsupported by the preponderance of substantial, reliable and probative evidence. Peninsula's first and second assignments of error are overruled.
 PADRUTTS' ASSIGNMENT OF ERROR I "THE LOWER COURT ERRED AS A MATTER OF LAW BY NOT ADDRESSING PADRUTTS' ASSIGNMENT OF ERROR ON [PENINSULA'S] APPLICATION OF SIDEWALK REGULATIONS TO THEIR PLAN, AND THE ZONING INSPECTOR AND BZA ERRED IN APPLYING THE REGULATIONS."
 {¶ 29} In their first assignment of error, the Padrutts argue that the trial court erred as a matter of law by not addressing their assignment of error regarding Peninsula's application of sidewalk regulations to their plan. They also contend that the Zoning Inspector and the BZA erred in applying the regulations. Because we find that the trial court erred in failing to address the Padrutts' assignment of error, we reverse and remand for proceedings consistent with this opinion. *Page 11 
 {¶ 30} In its journal entry, the trial court stated that "[w]hile there is reference in the briefing to disagreement concerning requirements for pedestrian walkways, the appeal does not by its terms include any such issues. This reviewing Court therefore cannot address those issues."
 {¶ 31} In their notice of appeal to the trial court, the Padrutts expressly listed several issues on which they based their appeal to the trial court. While the Padrutts did not specifically list the application of the sidewalk regulations in their notice of appeal, they raised this issue in their trial court brief as a specific assignment of error.
 {¶ 32} R.C. 2505.05 concerns the contents of a notice of appeal and states:
 "The notice of appeal described in section 2505.04 of the Revised Code shall conform, in the case of an appeal of a final order, judgment, or decree of a court, with the Rules of Appellate Procedure or the Rules of Practice of the Supreme Court and shall designate, in the case of an administrative-related appeal, the final order appealed from and whether the appeal is on questions of law or questions of law and fact. In the notice, the party appealing shall be designated the appellant, and the adverse party, the appellee. In the case of an administrative-related appeal, the failure to designate the type of hearing upon appeal is not jurisdictional, and the notice of appeal may be amended with the approval of the appellate court for good cause shown."
There is no requirement that the party appealing from an administrative order specifically state in the notice of appeal all the grounds on which he or she is appealing. Accordingly, we find that the trial court erred in failing to address this issue because "the appeal [did] not by its terms include any such issues."
 {¶ 33} Because the trial court did not address this assignment of error, this Court cannot review this issue on appeal. Lichten Const. Development, Inc. v. Paul W. Wilson, Inc. (Mar. 10, 2000), 1st Dist. No. C-990533, at *3. Therefore, we sustain the Padrutts' first assignment of error. *Page 12 
 PADRUTTS' ASSIGNMENT OF ERROR II "THE LOWER COURT ERRED AS A MATTER OF LAW IN ITS CONSTRUCTION OF [PENINSULA'S] PARKING SPACE REGULATIONS AND IN APPLYING THE REGULATIONS TO PADRUTT'S [SIC] PLAN."
 {¶ 34} In their second assignment of error, the Padrutts argue that the trial court erred in its construction of Peninsula's parking space regulations and in applying the regulations to the Padrutts' plan. We disagree.
 {¶ 35} Sec. 7.04(b) of the Zoning Ordinance, which governs two-family dwellings or multiple family dwellings, apartment houses and efficiency apartments, requires "[o]ne and one-half [parking spaces] for each unit and/or first bedroom and one additional for each additional bedroom over one." Sec. 7.03(b) governs the treatment of the half parking space and provides:
 "[w]hen units or measurements used in determining the number of required parking spaces result in a requirement of fractional space, any fraction up to and including one half shall be disregarded and fractions over one-half require one space."
 {¶ 36} The Zoning Inspector determined that the proposed use of the Property is for a multi-family dwelling, requiring a minimum of 5.5 parking spaces. The Zoning Inspector noted that 5.5 should be rounded down to five. The trial court agreed. The court found that there was no ambiguity in the Zoning Ordinance with regard to these sections.
 {¶ 37} While the language used by Peninsula in creating section 7.04(b) was imprecise, the phrase is only subject to one reasonable interpretation. Under the Padrutts' proposal, there will be three units. One unit will have two bedrooms while the other two units will have one bedroom. Pursuant to Sec. 7.04, the first bedroom in each unit requires 1.5 spaces and each additional bedroom in a unit requires an additional space. Accordingly, the two bedroom unit requires 2.5 parking spaces. The other two units have one bedroom and only require 1.5 parking *Page 13 
spaces a piece for a total of three spaces. Together, the three units require 5.5 parking spaces, which rounds down to a total of five parking spaces.
 {¶ 38} The Padrutts contend that one can also reasonably interpret this section as including two separate clauses: (1) "one and one-half for each unit, or (2) one and one-half for the first bedroom and one additional for each additional bedroom over one." They read this section as providing a unit standard and a bedroom standard. Under either standard, the Padrutts would be required to have a minimum of four spaces (rounding down from 4.5).
 {¶ 39} We find that the Padrutts' interpretation ignores the fact that this section not only governs two-family dwellings, multiple family dwellings or apartment houses, but also governs efficiency apartments. This section provides for both a scenario wherein a studio or efficiency apartment may not have a designated separate bedroom and a scenario wherein a multiple family dwelling might have one bedroom units and multiple dwelling units.
 {¶ 40} Accordingly, the Padrutts' second assignment of error is overruled.
 PADRUTTS' ASSIGNMENT OF ERROR III "THE LOWER COURT ERRED AS A MATTER OF LAW IN ITS CONSTRUCTION OF [PENINSULA'S] PARKING LOT REGULATIONS AND IN APPLYING THE REGULATIONS TO PADRUTTS' PLAN."
 {¶ 41} In the Padrutts' third assignment of error, they argue that the lower court erred as a matter of law in its interpretation of Peninsula's parking lot regulations and in their application of these regulations to the Padrutts' plan.
 {¶ 42} The Zoning Inspector determined that the Property required a full, hard-surfaced parking lot which included handicapped parking. The trial court agreed. Upon review of the relevant sections of the Zoning Ordinance, we agree in part and disagree in part. *Page 14 
 {¶ 43} Article 7 of the Zoning Ordinance provides the "Schedule of Off-Street Parking". Sec. 7.06 governs "Regulations for the Development and Maintenance of Parking Lots" and provides:
 "[i]n all districts where off-street parking lots are the principal use of a site or are permitted as an adjunct to the lawful use of property therein, and such facilities provide parking privileges to owners, occupants, tenants, employees, patrons, customers, members, visitors, and invitees therein, such off-street parking lots shall be constructed and maintained subject to the following regulations[.]"
Article 15 provides definitions for the terms used in the Zoning Ordinance. Sec. 15.02 defines an off-street parking lot as "[a] facility other than for single-family dwellings providing vehicular parking spaces along with adequate drives and aisles for maneuvering, so as to provide access for entrance and exit for the parking of more than three vehicles."
 {¶ 44} The Zoning Ordinance clearly provides that a multi-family dwelling possessing more than three parking spaces, such as the Padrutts' proposed project, requires a parking lot. The Padrutts contend that because they will have four parking spaces, divided into two separate parking areas, which will be exclusively for the use of their tenants, they are not actually constructing a parking lot. However, Sec. 7.06 does not require that the parking lot be open to the public. So long as the parking facility is "an adjunct to the lawful use of [the] property" and "provide[s] parking privileges to *** tenants", the Padrutts are required to comply with Sec. 7.06.
 {¶ 45} The Padrutts also argue that their proposal does not qualify as a parking lot under the definition set forth in Sec. 15.02 because they propose to provide two sets of two parking spaces. They point out that Sec. 15.02 discusses "parking of more than three vehicles." Sec. 15.02. We find no merit in this contention. The Padrutts are undisputedly providing four *Page 15 
parking spaces. The definition set forth in Sec. 15.02 does not state that the parking spaces must be contiguous.
 {¶ 46} The Padrutts additionally contest the trial court's finding that Sec. 7.06 requires a paved parking lot. A review of Sec. 7.06 reflects no requirement that a parking lot be paved. Rather, Sec. 7.06(c), which sets forth construction requirements for parking lots, states in pertinent part that "[a]ll parking lots shall, at a minimum, be surfaced and maintained with a durable and dustless surface (such as brick, stone, gravel or slag, washed silica pebbles, asphalt or concrete)."
 {¶ 47} The trial court cites Sec. 7.06 as the section of the Zoning Ordinance that requires the Padrutts to pave the parking lot. We find no support for this conclusion in Sec. 7.06. It appears that the trial court may have relied on the Zoning Inspector's erroneous application of Sec. 11.07(c) to the Padrutts' proposal. Article 11 provides the "Standards for Specific Land Uses". Sec. 11.07 governs the specific standards with which "Multiple-Family Dwellings and Developments" must comply. Section (c) states, in relevant part:
 "Street Design and Vehicle Circulation. Street connections shall be provided to adjacent neighborhoods and parcels in residential districts. Ingress and egress from the public streets shall be designed to minimize congestion and interference with normal traffic flow. All interior roads, drives, and parking areas within a multi-family development shall be hard surfaced and provided with curbs and gutters." (Emphasis added.)
While this section expressly governs multi-family dwellings, such as the Padrutts, it is not clear that section (c) applies to their Property. The sentence regarding the paving requirements for parking areas discusses "multi-family developments", not multi-familydwellings. A review of Article 15 of the Zoning Ordinance reflects a definition for the phrase "Dwelling, Multiple-family", but no definition for the term "multi-family development". We find that the trial court *Page 16 
abused its discretion in finding that the Zoning Ordinance requires the Padrutts to provide a paved parking lot.
 {¶ 48} Sec. 7.06(j), which governs "Parking for the Physically Handicapped", states:
 "Each parking lot that serves a building, except single-and two-family dwelling units, shall have a number of level parking spaces as set forth in the following table, and identified by an above-grade sign which indicates the spaces are reserved for physically handicapped persons."
This section provides that a lot that has 25 or fewer parking spaces, must provide a minimum of one handicapped space. This section clearly requires the Padrutts, who have proposed a multi-family dwelling, not a single or two-family dwelling, to provide one handicapped space.
 {¶ 49} Sec. 7.06 clearly provides different requirements for parking for multi-family dwellings. Once the Padrutts decided to convert their Property to a multi-family dwelling, they became bound by these requirements. If the Padrutts feel that they should not be subject to these requirements because their "project functionally [does] not rise to [the] level of utilization" which would necessitate their compliance with the parking lot requirements set forth in the Zoning Ordinance, they have an option to pursue a variance.
 {¶ 50} In conclusion, the trial court abused its discretion in finding that the Padrutts were required to pave the parking lot. The trial court did not abuse its discretion in upholding the BZA's decision that the Property must contain a parking lot and a handicapped parking space. The Padrutts' third assignment of error is sustained in part and overruled in part.
 PADRUTTS' ASSIGNMENT OF ERROR IV "THE LOWER COURT ERRED BY ASSESSING ALL OF THE COURT COSTS AGAINST THE PADRUTTS."
 {¶ 51} In their fourth assignment of error, the Padrutts assert that the trial court erred by assessing all of the court costs against them in light of the fact that they prevailed on the main *Page 17 
issue, i.e. whether Sec. 11.33 is a use regulation or an area regulation. We find no merit in this contention.
 {¶ 52} Civ. R. 54(D) states that "[e]xcept when express provision therefore is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." The Ohio Supreme Court has held that Civ. R. 54(D) "grants the [trial] court discretion to order that the prevailing party bear all or a part of his or her own costs." Vance v. Roedersheimer (1992), 64 Ohio St.3d 552,555. Accordingly, a trial court's assessment of costs will not be reversed absent an abuse of discretion. Wilson v. Szabo (Mar. 31, 2000), 11th Dist. No. 98-P-0128, at *5, citing Vance, 64 Ohio St.3d at 555.
 {¶ 53} Here, Peninsula prevailed on the majority of the issues presented below. The Padrutts argue that although they only prevailed on one of the issues below, it was a major issue. The Padrutts have not explained why this issue was the major issue, or one of, the major issues in this case.
 {¶ 54} The Padrutts have not demonstrated that the trial court's decision assessing costs against them after they lost on three of the four issues presented below, was unreasonable, arbitrary or unconscionable. Accordingly, we find no abuse of discretion in the trial court's decision. The Padrutts' fourth assignment of error is overruled.
 III. {¶ 55} Peninsula's assignments of error are overruled. The Padrutts' first assignment of error is sustained. The Padrutts' second and fourth assignments of error are overruled. The Padrutts' third assignment of error is overruled in part and sustained in the part. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part and the cause is remanded for proceedings consistent with this opinion. *Page 18 
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed equally to both parties.
BAIRD, J. CONCURS.